184 N.W.2d 22 (1971)
Application of County of St. Louis, Minnesota, to affix and determine the legal settlement for poor purposes of LaDean FIIHR.
COUNTY OF ST. LOUIS, Respondent,
v.
COUNTY OF SCOTT, Appellant.
No. 42371.
Supreme Court of Minnesota.
February 12, 1971.
*23 Robert O. O'Neill, County Atty., Robert J. Goggins, Asst. County Atty., Shakopee, for appellant.
John C. Arko, County Atty., Keith M. Brownell, Asst. County Atty., and Bruce L. Anderson, Duluth, for respondent.
Heard before KNUTSON, C. J., and NELSON, MURPHY, PETERSON, and ROSENGREN, JJ.

OPINION
NELSON, Justice.
Appeal by Scott County from an order of the District Court of St. Louis County whereby Scott County was adjudicated the legal settlement for poor relief purposes within the State of Minnesota of LaDean Fiihr and her minor child, Julie Fiihr, and was ordered to assume the expenses of care and support of Julie Fiihr. The appeal results from an action initiated by respondent, St. Louis County, to determine whether respondent or appellant, Scott County, would ultimately bear the expense of caring for Julie Fiihr, born out of wedlock to LaDean Fiihr on April 18, 1968.
The mother, LaDean Fiihr, was born near Brookings, South Dakota, on October 15, 1947, and lived with her parents until November 25, 1966, when she moved to Shakopee, Scott County, Minnesota. In Shakopee she lived with her brother and spent the first three weeks of her stay babysitting for his family and looking for a job. She eventually obtained a job in Golden Valley, and a short time later moved out of her brother's house but continued to reside in Shakopee.
Sometime during the fall of 1967, LaDean became pregnant and was sent by the putative father to the Bethel Home for unmarried expectant mothers in Duluth to await the birth of her illegitimate child. On April 18, 1968, LaDean gave birth to a baby girl, Julie Fiihr, at the Bethel Home. LaDean gave up the baby while she was at the *24 home, and her parental rights were subsequently terminated. She returned to Shakopee on April 27, 1968, to resume her residence there, leaving the child in St. Louis County under the care and support of the St. Louis County Welfare Department. Unfortunately, the child was born a hydrocephalic with serious mental deficiencies. Substantial expense has already been incurred for her care, treatment, and support, and the outlook is that Julie will probably require full support and care during her entire lifetime.
Respondent petitioned the district court pursuant to Minn.St. 261.08 to affix and determine the legal settlement for poor-relief purposes for LaDean Fiihr, there being a dispute between the two counties as to which county was responsible under the law for the care and maintenance of Julie Fiihr. Both parties stipulated that the Bethel Home, situs of LaDean's residence while in St. Louis County, is a public institution under § 261.07,[1] so that all of the time LaDean spent in St. Louis County was excluded time and could not be used for purposes of determining settlement; and that her only purpose for going to Duluth was to have the child, leave it, and return to Shakopee.
After hearing testimony and receiving other evidence, the court issued findings of fact, conclusions of law, and an order determining that Scott County was the legal settlement for poor-relief purposes of LaDean Fiihr and Julie Fiihr and that Scott County must assume the expense of care and support for the minor child.
The issues involved here are: (1) Was LaDean an emancipated minor from November 27, 1966, to November 27, 1967, the time during which she lived in Scott County and therefore eligible for a legal settlement for poor-relief purposes in Scott County? (2) Is a proponent of evidence bound by the evidence he introduces?
1. Appellant contends that LaDean was an unemancipated minor between November 27, 1966, and November 27, 1967, when she was 19 years old and resided in Scott County before the birth of her child. As such, appellant contends, she never obtained settlement in the State of Minnesota and thus could not gain settlement in Scott County. The district court found that LaDean settled in Scott County in her own right, lived apart from and was not supported by her parents, and was an emancipated minor during the time in question.
Appellant argues that the great weight of evidence adduced at the hearing showed that LaDean was not an emancipated minor. In its brief, it cites evidence that she lived with her brother, who acted as agent for her parents in looking after her; that she planned to return home if things did not work out in Shakopee; that she left most of her clothing with her parents when she came to Shakopee; that she returned home three or four times for visits during the year in question; and that she received gifts from her parents on holidays.
The foregoing evidence is by no means conclusive on the question of LaDean's status as a minor. Appellant in its brief admitted that after finding employment LaDean moved out of her brother's home and lived elsewhere in Shakopee. The fact that she planned to return home if things did not work out in Shakopee seems quite insignificant in light of subsequent events. Of more persuasive force is the fact that when she became pregnant, instead of going home, she went to Duluth to have her child, and after the baby was born, she did not return to South Dakota but returned to Shakopee. Also, when she went to South Dakota for the Christmas holidays in 1966, she collected all of her clothing and belongings and took them to Shakopee with her after Christmas. Making occasional visits to one's parents and receiving birthday and Christmas gifts from them are certainly not indicative of continuing dependence on them, but rather of parental-filial esteem and love which both parents and children may share throughout their lives.
*25 This court has had but few occasions to discuss and legally define an emancipated minor. In Taubert v. Taubert, 103 Minn. 247, 249, 114 N.W. 763, 764, a tort action by a minor against his parent, this court stated:
"* * * The general rule is that a minor cannot sue his parent for a tort; but, if he has been emancipated, he can. A mere waiver, however, by the parent of the right to the earnings of his minor child, does not alone constitute such emancipation. There must be a surrender by the parent of the right to the services of his minor child, and also the right to the custody and control of his person."
In Lufkin v. Harvey, 131 Minn. 238, 240, 154 N.W. 1097, 1098, this court said:
"* * * In the United States the doctrine of emancipation has been applied with some liberality. Emancipation is not, however, to be presumed. It must be proved. * * * A minor may be emancipated by an instrument in writing, by verbal agreement, or by implication from the conduct of the parties. * * * There may be complete emancipation, even though the minor continues to reside with his parents. * * *
"Complete emancipation gives to the minor his time and earnings and gives up the parents' custody and control, and in fact works an absolute destruction of the filial relation."
In In re Settlement of Horton, 212 Minn. 7, 9, 2 N.W.2d 149, 150, we stated:
"* * * Emancipation is the act of the parent * * *. Emancipation need not be in writing or in express words. It may be implied from conduct. These considerations apply in whatever form of action or proceeding emancipation is for determination."
Other courts have held that a parent's consent to a child's departure from the parental home to make his own way in the world is an emancipation of the child. See, Spurgeon v. Mission State Bank (8 Cir.) 151 F.2d 702; Rounds Bros. v. McDaniel, 133 Ky. 669, 118 S.W. 956; Holland v. Hartley, 171 N.C. 376, 88 S.E. 507. In Swenson v. Swenson, 241 Mo.App. 21, 227 S.W.2d 103, 20 A.L.R.2d 1409, the Kansas City Court of Appeals held that emancipation of a child is the relinquishment by the parent of control and authority over the child, conferring on him the right to his earnings and terminating the parent's legal duty to support the child.
In 39 Am.Jur., Parent and Child, § 64, it is stated:
"Whether a child has been emancipated must be determined largely upon the peculiar facts and circumstances of each case and is ordinarily a question for the jury."
In reviewing the abbreviated record submitted on this appeal, and in the light of the authorities cited above, this court is satisfied that the trial court, as sole arbiter of the facts and circumstances, committed no error when it found that LaDean Fiihr became an emancipated minor when she left her home in South Dakota and came to live in Shakopee. As an emancipated minor with a year's residence in Scott County, LaDean acquired legal settlement for poor-relief purposes in Scott County pursuant to § 261.07, subd. 1. Appellant argues that her first three weeks in Shakopee, spent with her brother, gave her only the status of a visitor and, therefore, she did not have the full year of residence required by the statute. Appellant, however, cites no authority for this proposition, and the wording of § 261.07, subd. 1, "Every person except those hereinafter mentioned, who has resided one year continuously in any county, shall be deemed to have a settlement therein," does nothing to strengthen its argument. The evidence is clear that LaDean was a resident of Scott County for the period of November 27, 1966, to November 27, 1967.
*26 2. Appellant further contends that respondent is bound by a memorandum of the State Department of Public Welfare which respondent attached to its petition and which respondent later offered and had received into evidence. It is difficult to see how appellant's contention is a real issue in this case. The memorandum was in response to the Scott County Welfare Department's inquiry as to whether LaDean had obtained a settlement for poor-relief purposes in Minnesota. The memorandum, in effect, stated that in the state department's opinion LaDean was not an emancipated minor and had not gained a poor-relief settlement in Minnesota, but that if she were found to be in need of relief assistance in Minnesota, the county where she was presently residing had the obligation of supplying her emergency needs. Scott County, relying on this memorandum, refused to provide support or expenses for the care of Julie Fiihr, who was under the legal custody of the St. Louis County Welfare Department. It is this memorandum which caused respondent to petition the court to determine who was to provide support for the child.
The court below determined, contrary to the memorandum, that LaDean was an emancipated minor; that she acquired legal settlement for poor-relief purposes in Scott County pursuant to § 261.07, subd. 1; and that Julie, an unemancipated minor, had the same legal settlement as her mother pursuant to § 261.07, subd. 3. The evidence supports this determination.
The position of the welfare department's memorandum at the hearing was not one of uncontradicted and unimpeached evidence, binding respondent, but only of an opinion rendered by a state agency which respondent, under § 261.08, was entitled to challenge in the district court proceeding.
The order of the district court is affirmed.
Affirmed.
NOTES
[1] See, Minn.St. 261.07, subds. 1, 2, and 3.