## OPAL BRUGGER v. ROY A. BRUGGER.

229 N. W. 2d 131.

April 18, 1975—No. 44614.

*Streater, Murphy, Brosnahan & Langford* and *Kent A. Gernander,* for appellant.

*Kenneth P. Peterson* and *Robert J. Molstad,* for respondent.

*Raymond C. Ploetz,* amicus curiae, seeking affirmance.

Heard before Sheran, C. J., and Kelly, Todd, Yetka, and Scott, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

This divorce action was tried without a jury in district court. Judgment was entered on August 11, 1972, granting plaintiff

an absolute divorce from defendant. The judgment awarded plaintiff custody of the parties' unemancipated minor child, Danny, and support for "said minor child" of $80 per month "until such time as said child becomes emancipated or reaches the age of 21 years." The judgment also awarded plaintiff possession and occupancy of the homestead of the parties until "the minor child of the parties, Danny Brugger, is emancipated or reaches the age of 21 years," at which time the homestead was to be sold and the net proceeds divided between the parties.

On June 1, 1973, at which time Danny Brugger was 18 years of age, the age of majority in Minnesota was reduced from 21 to 18 by L. 1973, c. 725.

This case came to us on an appeal by the defendant from an order of the district court denying defendant's motion for an order (1) declaring defendant relieved of any further obligation for support of the child of the parties, and (2) directing a sale of the homestead as provided for in the judgment. We affirm.

We consider the following issues: Whether enactment of the new age of majority law had the effect of (1) accelerating the provision in the decree providing for sale of the homestead and terminating plaintiff's right to occupy the homestead; and (2) relieving defendant of the obligation to provide support for his 18-year-old child.

■ Authority to require maintenance for children appears in Minn. St. 518.57, which reads as follows:

"Upon a decree of dissolution or annulment, the court may make such further order as it deems just and proper concerning the maintenance of the minor children as is provided by section 518.17, and for the maintenance of any child of the parties as defined in this act, as support money, and may make the same a lien or charge upon the property of the parties to such proceeding, or either of them, either at the time of the entry of such judgment or by subsequent order upon proper application therefor."

Minn. St. 518.54, subd. 2, as amended by L. 1973, c. 725, § 74, defines a "child" as "an individual under 18 years of age, or an individual who, by reason of his physical or mental condition, is unable to support himself." Previous to the 1973 amendment, the statutory age of a "child" was stated as 21 years of age.

Other sections of L. 1973, c. 725, of interest here are:

§ 86. "Notwithstanding any other provision of law to the contrary, the provisions of any will executed prior to the effective date of this act relating to ones 'minority' or 'majority' or other related terms shall be governed by the definitions of such terms existing at the time of the execution of the will."

§ 88. "Notwithstanding any other provisions of law to the contrary, the provisions of any trust created prior to the effective date of this act relating to ones 'minority' or 'majority' or other relating terms shall be governed by the definitions of such terms existing at the time of the creation of such trust."

§ 89. "For purposes of any program for foster children or children under state guardianship for which benefits are made available on the effective date of this act, unless specifically provided therein, the age of majority shall be 21 years of age."

The trial court in its memorandum made a part of the order stated:

"This case was a contested divorce case. The real issues in the case related to property settlement, alimony and support. Although there were eleven children born of this marriage only one, Danny Brugger, was unemancipated and living at home with the plaintiff at the time of the divorce. In making the order for judgment the Court considered all facets of not only the family finances and income but also the health of the parties, and, after considering everything, made provisions that seemed to the Court, at least, equitable in the light of conditions then existing. Based upon the evidence the Court was impressed with two considerations; one, the probability that Danny would remain in his mother's home until he was approximately 21 years of age,

and two, that the chief asset of the parties was the unencumbered homestead of the parties. Because of her age, lack of work experience, condition of health, and the need to provide a home for Danny support and occupancy of the home was given to plaintiff until Danny 'becomes emancipated or reaches the age of 21 years.' Even though Danny is still living at home with his mother and is dependent upon her, defendant now claims that because of legislative enactment of Chapter 725, Laws of Minnesota 1973, Danny is 'emancipated' and that therefore defendant should be relieved of obligation to pay support and the homestead of the parties should be sold as provided in the original decree.

"At the time of the divorce it is obvious that neither party nor the Court had contemplation of the likelihood that the Legislature would reduce the age of majority from 21 to 18. Therefore, it cannot be contended that this possibility was contemplated at the time of the decree. In framing a decree in a divorce case of this kind, the Court must of necessity 'balance the equities' in the light of facts then existing or in the light of facts that will with reasonable probability exist in the future. At the time of the divorce Danny was a dependent child, legally as well as factually, and at that time it appeared as if it would be unlikely his emancipation would occur much prior to his reaching the age of 21 years. In attempting to do equity the Court gave consideration to that probability and balanced support for him and occupancy of the homestead against other provisions of the decree favorable to the defendant. It would appear to the Court that if provisions for Danny's support terminates and the provision for the sale of the homestead becomes operative because of legislative action, the entire decree should be reopened for a re-balancing of all of the equity between these parties.

"The Court has not [been] furnished with, nor has it been able to find, any cases directly on the point. Most of the cases reported have to do with decrees based upon stipulations. Vicino v. Vicino (Conn.) 298 Atl. 2d 241 holds that the father must pay until the

child reaches 21 notwithstanding legislative enactment of the 18-year old statute. The decision was based upon the particular wording of the Connecticut statute and its legislative history to the effect the rights and obligations acquired or imposed before enactment of the Act would not be affected by the statute. Of course the Minnesota statute does not expressly contain any such language. It is arguable, however, that Sec. 86, Sec. 88, and Sec. 89 indicate a legislative policy that an obligation created prior to the enactment of the statute should not be changed by its enactment, although certainly divorce decrees are not mentioned."

It appears from the trial court's excellent and helpful memorandum that the provisions for child support and the use of the homestead and its ultimate sale were taken into account in balancing other portions of the judgment which were made more favorable to the defendant because of the provisions for occupancy of the homestead and child support. If the age of majority at the time of trial had been 18 years of age, the court might have ordered a greater amount of child support, awarded the plaintiff a larger share of the assets of the parties, provided for a discontinuance of child support at age 18 and required a sale of the homestead with a division of the net proceeds when the parties' youngest child reached 18 years of age. In so doing, that court could have effected about the same balance of equities even though it was operating under a law with a different age of majority.

As pointed out in the trial court's memorandum, in the light of §§ 86, 88, and 89 of L. 1973, c. 725, it is doubtful that the legislature intended to affect support provisions in divorce decrees predating L. 1973, c. 725. The unreasonable result of applying in this case the change in the age of majority created by the statute in question is an even more persuasive argument for the conclusion that the legislature did not intend that judgments in divorce cases entered prior to the effective date of the law changing the age of majority would be affected by it.

The laws in question are not facially ambiguous and when considered together with Minn. St. 518.64 may not in all instances have the entirely unfair result that appears at first glance. Under Minn. St. 518.64 the trial courts have the power, after making a decree for alimony, on petition of either of the parties to revise and alter a divorce decree respecting the amount of such alimony. This law also provides that an award of the right of occupancy of the homestead is not final, and it follows that divorce decrees may be revised or altered regarding occupancy of the homestead. However, not all provisions in divorce decrees may be changed to rebalance equities. There are possible cases in which a divorce decree made a division of property and contained child support provisions up to age 21 but did not allow alimony. Under these facts the trial court could not thereafter award any alimony nor could it increase the amount of assets awarded to the wife upon petition for such relief because of the spouse's change in circumstances, i.e., relief from supporting his child or children for the 3 years between their attaining 18 and 21 years of age.

We have little difficulty in deciding the first issue presented. The provision awarding plaintiff possession and occupancy of the homestead of the parties until the minor child of the parties is emancipated or reaches the age of 21 years should be construed as of the date of the decree. The trial court could have given the plaintiff the use and occupancy of the homestead until Danny was 21 or for that matter until he was older than that. Minn. St. 518.54, subd. 2, has not changed the power of the trial court to decree the use and occupancy of the homestead to the wife beyond the minority of any children. In other words, in divorce actions the ages of the children of the parties are not controlling on this question—in fact the right of occupancy of the homestead might be granted in instances where there are no children. The clause, "until the minor child of the parties * * * is emancipated or reaches the age of 21 years," was used as a measuring device. The time period involved is not contrary to any

statute and the period of time involved is permissible in awarding possession and occupancy of the homestead. We hold, therefore, that the new age of majority law had no effect on that portion of the decree awarding plaintiff possession and occupancy of the homestead and providing for its sale and a division of the net proceeds.

■ The second issue raised is more troublesome. We doubt that the legislature intended to upset the balanced equities in divorce decrees even though the statutory law changing the age of majority, and thus the age for support, standing alone, is facially clear. However, we must construe other statutes that are involved. We are impressed with the trial court's suggestion that §§ 86, 88, and 89 indicate a legislative policy that an obligation created prior to the enactment of the statute changing the age of majority should not be changed by its enactment. This statute, if applied retroactively, would unbalance the equities in prior divorce decrees, which under some circumstances, as we have pointed out, could not be readjusted.

The legislature has created a presumption against giving statutes retroactive effect. Minn. St. 645.21 provides: "No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." This court has construed that statute as being applicable to all laws without making any distinction between laws relating to procedure and those pertaining to substantive rights. Chapman v. Davis, 233 Minn. 62, 45 N. W. 2d 822 (1951). If this statute creating a presumption against retroactive effect applies to procedural as well as substantive rights, it should not make any difference whether or not a child's right to support as set forth in a divorce decree was vested.[1] Furthermore, such support provisions are usually so intertwined with other rights and obligations in divorce decrees that it usually cannot be said that the child's right to support is the only part

---

[1] This court in In re Trust Under Will of Davidson, 223 Minn. 268, 26 N. W 2d 223 (1947), held that majority or minority is a status and not a fixed or vested right.

of the decree that would be affected by a holding that the provisions for child support beyond 18 years of age in decrees entered prior to the enactment of the statute are now void. Thus, the statutory presumption should be applicable in this case unless the legislature clearly and manifestly intended to make the law in question apply retroactively to divorce decrees requiring support of children beyond 18 years of age.

We find nothing in L. 1973, c. 725, § 74, which defines a "child" as an individual under 18 years of age, that indicates the change in status should retroactively affect the support provision for minors in prior divorce decrees.

We are aware that an argument can be made that because the legislature made certain exceptions by §§ 86, 88, and 89, that there is a negative implication that the legislature intended immediate application of all sections of L. 1973, c. 725, except where specifically exempted. We do not think this argument is any more persuasive than that advanced by the trial court to the effect that those same sections show a legislative policy that an obligation created prior to the enactment of the statute should not be changed by its enactment. In any event, a negative implication, under the circumstances in this case, hardly shows the clear and manifest intent required by Minn. St. 645.21 to give retroactive effect to statutes.

In construing the statute changing the age of majority, we must construe it together with the statute creating a presumption against the statute's being given retroactive effect. In this context we hold that L. 1973, c. 725, § 74, has no retroactive effect on provisions for the support of children contained in divorce decrees entered prior to the enactment of that statute.

Our rationale in arriving at this holding is fortified by the many cases involving statutory interpretations and applications. We are here trying to determine legislative intent. We ask ourselves then, is this the kind of situation in which the legislature intended that the statutory presumption against retroactive effect be applied. There are a number of guidelines in general use

by courts which are aids in arriving at the legislative intent. Courts frequently consider the consequences of a proposed interpretation. It is presumed that undesirable consequences are not intended.[2] Another rule is that statutes should be interpreted in favor of a just or fair interpretation and one that would promote and effectuate justice.[3]

The consequences here of permitting a retroactive application of the statute changing the age of majority are obviously unfair and unjust. In some cases relief could be obtained from such an application, but in other cases no relief could be fashioned by the trial court. In those cases where relief might be granted and the equities could be again placed in balance, there would be unnecessary and sometimes expensive litigation.

Affirmed.

YETKA, JUSTICE (concurring and dissenting).

The Legislature has altered the age of majority from 21 to 18. There is no vested property right in the privilege of infancy. Majority or minority is a status and not a fixed or vested right. We have so held in the case of In re Trust Under Will of Davidson, 223 Minn. 268, 26 N. W. 2d 223 (1947).

In holding as it does, the majority is really setting up two classes of people—those who after passage of the act are children of divorced parents will not be eligible for support payments; yet the children of parties divorced prior to the act will.

Myriad problems are raised by the decision, including the question of how preexisting decrees will be enforced.

Since the legislature has decided that the age of 18 is the new age of majority in Minnesota and that 18-year olds are entitled to buy and sell property and to vote in our elections, I think that settles the question raised by this appeal and I would hold that no further support payments need be made pursuant to any divorce decree beyond 18 years of age, absent disability or other conditions spelled out in previous decisions.

---

[2] 73 Am. Jur. 2d, Statutes, § 258.

[3] 73 Am. Jur.2d, Statutes, § 260.

The problem of granting extended occupancy of the homestead does not exist in this case because the court clearly had the authority to do that by separate statute.

MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.