**Bernadette M. STREITZ, presently known as Bernadette M. Callstrom, Respondent,**

v.

**Jeffrey Thomas STREITZ, Appellant.**

**No. C7–84–909.**

Court of Appeals of Minnesota.

Feb. 26, 1985.

Thomas M. Neuville, Grundhoefer & Neuville, Northfield, for appellant.

G.M. Gorgos, Farmington, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

RANDALL, Judge.

The parties were divorced on February 9, 1973, and the father was ordered, pursuant to stipulation, to pay $75.00 per month for each of four children until any child became emancipated, married, or reached the age of 21. He brought this action to cancel arrearages of $5,930 and modify his current obligation, and to have the two oldest children declared emancipated. The trial court denied his motions and entered judgment against him for the arrearages, and he appealed. We affirm in part, and reverse and remand in part.

## FACTS

At the time of the divorce, the parties had four minor children. The two oldest are now over 18: Mary Lynn turned 18 in May 1982, and Jeffrey, Jr. turned 18 in the summer of 1983. Appellant was current in his support obligation through 1980.

At the time of the hearing on this matter (August 1983), Mary Lynn, the oldest daughter, was living with respondent's mother. Respondent testified she still bought Mary Lynn's groceries and paid for her other expenses, and Mary Lynn lived at home intermittently so she could save for school. Mary Lynn was to begin attending UMD in fall 1983; respondent paid all her pre-enrollment costs and took out a student loan for her. Jeffrey, the second child, lived at home and was employed at a local fast food restaurant. He also was saving for school. At oral argument, the parties stipulated that Jeffrey had become emancipated since the appeal was filed, and an order reducing child support by $75.00 per month had been entered. (That order has not been appealed and is not at issue here.)

Respondent and her husband had gross income of $44,894.00 in 1982, of which $12,000 was attributable to respondent. She also collected six months of workers' compensation in 1982 which was not reflected in that figure. After an on-the-job injury, she was re-training for a different job with the same employer at $10.47/hr.

Appellant was current in his child support until 1981. In 1981 he suffered a nervous breakdown, compounded by high blood pressure and stress. On the advice of his doctor, he quit his job at Northwest Airlines. From April of 1981 until September of 1982 appellant was employed only intermittently. He is now working for his brother's woodworking shop at $9.25/hour, and takes home between $270.00 and $283.00 per week. His wife is employed part time, earning between $220.00 and $240.00 net per month. Appellant and his second wife have three very young children.

The trial court found neither Mary Lynn nor Jeff to be emancipated and found that none of the arrearages could be reduced. Appellant moved for a hearing to consider additional (new) evidence, and the court denied the motion. The new evidence was that one of appellant's young children in his second marriage developed seizures and had to undergo treatment at the Mayo Clinic. Appellant has no medical insurance to help defray those expenses.

## ISSUES

1. Did the trial court err in finding the parties' adult children unemancipated?

2. Did the trial court err in refusing to reduce appellant's current or past child support obligation?

## ANALYSIS

### I.

*Emancipation*

The finding that the children were not emancipated was a finding of fact and cannot be disturbed unless clearly erroneous. Minn.R.Civ.P. 52.01. The hearing transcript contains evidence to support the finding, even though the daughter was in college and both were over 18. Whether Jeffrey was emancipated at the time of the hearing does bear on the question of arrearages, even though it has been stipulated that he is now emancipated.

Cases defining emancipation have focused on a parent's legal right to control the actions of a child. In *In re Fiihr,* 289 Minn. 322, 184 N.W.2d 22 (1971) the court held that the emancipation of a child was characterized by the relinquishment of control and authority or the severance of the parent-child relationship. The court also determined, however, that whether a child is emancipated is to be determined largely on the peculiar facts and circumstances of each case. In *Cummins v. Redman,* 312 Minn. 237, 251 N.W.2d 343 (1977), the terms of a divorce decree ordered support until the child was 21 or emancipated. The daughter lived at home and worked full-time for the year following her high school graduation. She then took a trip to Europe and decided to attend college. Her mother paid tuition and purchased some of her clothes. The court ruled she was *not* emancipated, even though over 18. The situation here is similar.

■ Appellant argues that he and respondent no longer had any legal right to control the actions of the children once the children reached 18, and thus the children are emancipated regardless of where they live, how they are supported, or what they do. However, in *Brugger v. Brugger,* 303 Minn. 488, 229 N.W.2d 131 (1975) and *Yaeger v. Yaeger,* 303 Minn. 497, 229 N.W.2d

137 (1975), the supreme court stressed that the change in the age of majority was not retroactive and would not change a duty to pay child support until age 21 in those cases where it had been ordered or stipulated to. To hold that children over 18 are automatically emancipated because they have the legal power to control their own actions would be to nullify those decisions. In both *Brugger* and *Yaeger,* the decree was worded like the decree here; that is, child support was awarded until the child reached 21 or was emancipated. The trial court's finding that the children were not emancipated was not clearly erroneous.

### II.

*Arrearages and reduction*

Appellant contends the trial court erred in not retroactively reducing the child support payments. In support of its refusal to do so, the trial court found that appellant had quit his job with Northwest Airlines for personal reasons, not medical reasons, and thus his inability to meet his child support obligation was, in effect, voluntary (or, in the words of Minn.Stat. § 518.64, subd. 2, "willful"). Appellant cites his receipt of unemployment compensation as support for his position that he quit for medical reasons. As further support for his contention that his failure to pay the full amount of his obligation after April 1981 was not willful, appellant cites his bankruptcy action in 1982. As a result of the bankruptcy, appellant and his wife have few assets. Additionally, they lost approximately $12,000 of equity in their home when the contract for deed was cancelled and currently rent their place of residence. He argues that all these circumstances entitle him to a retroactive modification of his child support obligation. Appellant also argues that the needs of the children have substantially decreased, since only the youngest of the four is not old enough to hold at least a part-time job.

■ Minn.Stat. § 518.64, subd. 2 (Supp. 1983) allows for downward modification of child support upon a showing of substan-

tially decreased earnings and/or substantially decreased needs, either of which makes the original dissolution terms unreasonable and unfair. The trial court erroneously stated that a material change of circumstances entitling an obligor to a reduction in child support must be *bilateral.* Such is not the law. *Heaton v. Heaton,* 329 N.W.2d 553, 554 (Minn.1983). Since appellant's claim of substantially decreased earnings was not refuted, appellant demonstrated a material change of circumstances which might have entitled him to a reduction in child support *even if* the court chose not to believe the evidence of decreased needs on the part of the children. On remand, the trial court should reconsider its decision, bearing in mind that the change of circumstances need not be bilateral.

Minn.Stat. § 518.64, subd. 2 also provides that a downward modification of a support order "may be made retroactive only upon a showing that any failure to pay in accord with the terms of the original order was not willful." All testimony indicated that while appellant had not been *ordered* to quit his job at Northwest Airlines, his doctors had strongly advised him to seek other employment. The trial court's determination that appellant quit his job for "personal reasons" was thus clearly erroneous: appellant quit for medical reasons. His ensuing financial troubles which resulted in the support arrearages were thus not willful.

All evidence indicates that appellant made good faith efforts to stay current in his support obligation. It also indicates that appellant's income cannot possibly be stretched to make his current payments and pay against his arrearages. Since his failure to pay was not willful, equity demands that his arrearages be reduced.

## DECISION

The trial court did not err in finding the two older children unemancipated.

A material change of circumstances entitling an obligor to a reduction in support need not be bilateral. The record discloses appellant's failure to pay was not willful. Appellant's financial condition warrants a reduction of arrearages, and possibly a reduction in current child support. We leave the amounts to the discretion of the trial court and remand.

Affirmed in part, reversed and remanded in part.