**In re the Marriage of Mary Davidson WINTER, Petitioner, Appellant,**

v.

**Laurence Edward WINTER, Respondent.**

**No. C5–85–563.**

Court of Appeals of Minnesota.

Oct. 22, 1985.

Review Denied Dec. 30, 1985.

Robert H. Zalk, Fredrikson & Byron, P.A., Minneapolis for appellant.

Leo Dorfman, Dorfman & Dorfman, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge

Mary Winter appeals the trial court's refusal to modify Laurence Winter's child support obligation. Although the decree provides for support to terminate when the children reach age 21, the trial court concluded that it had no power to increase the amount of support for those children who are presently 18 years or older. The trial court also found that the circumstances of both parties and the needs of the children had substantially changed, but that the original child support order remained fair and reasonable. Mary Winter contends that she is entitled to attorney's fees at trial and on appeal. We reverse and remand.

## FACTS

The Winters were married in 1960, and their marriage was dissolved in 1971. Mary Winter was granted custody of their four children: Anne, now age 22; Catherine, now age 21; William, now age 18; and Peter, now age 17. The parties stipulated that Laurence Winter would pay $200 per

month per child until each child reached age 21, entered the military, married, died, or became self-supporting or emancipated. In 1970, when the parties set the child support obligation, Laurence Winter had just begun practicing medicine and his gross income was about $21,000. Mary Winter had income of between $8,000 and $10,000 per year from a trust established by her grandfather. The decree was amended in 1975 to eliminate her receipt of $700 per month in maintenance, but the child support provisions were never modified.

In August 1984 Mary Winter moved to increase child support. At that time she was earning $54,000 per year in gross income as a referee for the Hennepin County District Court; she also receives approximately $34,000 in annual trust income. She has remarried, and her second husband earns gross income of about $45,000 per year. She has saved a minimal amount of money over the years and in 1983 invaded trust principal to the extent of $48,000 to pay for repairs and improvements to her home.

Laurence Winter has married for the third time and has custody of two children from his second marriage. When he began to testify at the hearing, the trial court indicated that a substantial change of circumstances had already been demonstrated. Consequently, the record contains relatively little information about his financial resources other than his salary. In 1983 his gross salary was $456,000 and his net salary was about $258,000. Through the third quarter of 1984 his gross salary was $545,000.

The Winter children each receive between $4,000 and $6,500 annually in income from individual trusts established by Mary Winter's mother.[1] The trust principal for each child was originally about $136,000, but the two oldest children invaded principal to the extent of about $50,000 to cover college expenses.

The trial court found that despite the change in circumstances of the parents and the increased needs of the children, the terms of the original decree remained fair. The trial court also concluded that any increase in support for any child 18 years or older "is beyond the power of the court."

## ISSUES

1. Did the trial court err in finding that it had no power to increase support for those children between the ages of 18 and 21?

2. Did the trial court err in finding that, despite the change in circumstances, the 1970 order remained fair and reasonable?

3. Is appellant entitled to an award of attorney's fees for the litigation at trial or on appeal?

## I

Laurence Winter does not dispute that his support obligation extends until the children reach age 21. *See Brugger v. Brugger*, 303 Minn. 488, 229 N.W.2d 131 (1975). He argues, however, that the court had no power to *increase* support for the children who at the time of the hearing were between the ages of 18 and 21. The trial court agreed with him and concluded that "[a]ny *increase* in support for any child of the parties eighteen (18) years of age or older, or to be paid beyond that age, unless the child is under 20 and in secondary school, is beyond the power of the Court."

In support of his argument Dr. Winter cites *Hampton v. Hampton*, 303 Minn. 500, 229 N.W.2d 139 (Minn.1975). In that case the court held that the contempt power is not available to enforce actions for accrued child support as to children over the age of 18. *Id.* at 502, 229 N.W.2d at 141. However, *Hampton* addressed only the availability of the "extreme sanctions of contempt," not the continuing jurisdiction of the trial court in child support matters.

---

1. The trusts were established to provide for the support and education of the children and to

provide them with funds necessary to enter a business or profession or to establish a home.

■ As the Minnesota Supreme Court recently said,

In the practice of family law * * * modifications of judgments on the basis of changed circumstances are *sui generis* and do not fit within the reasons for the rules with respect to finality of judgments * * *. [D]omestic relationships, by their nature, continue under the jurisdiction of the court virtually throughout the lives of the parties. Accordingly, the legislature specifically authorized modification, in cases of changed circumstances, of those provisions of divorce decrees affecting custody, visitation, maintenance, and support.

*Angelos v. Angelos*, 367 N.W.2d 518, 519 (Minn.1985). As long as the court retains jurisdiction over the children's support, the court may modify the obligation at its discretion, whether by increasing or decreasing the amount. *See, e.g., Streitz v. Streitz*, 363 N.W.2d 135 (Minn.Ct.App.1985) (this court remanded for a reduction in child support for two children between the ages of 18 and 21 because of the father's decreased earnings).

■ In this case the decree gives the court jurisdiction over child support until the children reach 21. Therefore the trial court erred in concluding that it had no power to increase Laurence Winter's support obligation for his children between the ages of 18 and 21. Neither does a stipulation entered into 15 years ago limit the discretionary power of the court in setting child support now, as long as modification is justified. *See Hellman v. Hellman*, 250 Minn. 422, 426, 84 N.W.2d 367, 371 (1957); *see also Kaiser v. Kaiser*, 290 Minn. 173, 180, 186 N.W.2d 678, 683 (1971).

## II

Child support may be modified upon a showing of substantially increased earnings or needs of a party that render the terms of the original decree unreasonable or unfair. *See* Minn.Stat. § 518.64, subd. 2 (1984).

The trial court found that a substantial change had occurred in both the earnings of the parents and the needs of the children, but that the change did not make the original decree unreasonable or unfair. However, the court somewhat inconsistently implies that the decree is unfair when it goes on to find that a deviation from the guidelines is required:

There has been no evidence that the present financial resources of these children and the financial resources of [their mother] and their present needs are such that the children do not have a standard of living comparable to that which they would have had if the marriage had not been dissolved. * * * The combined resources of the children and the [mother] * * * enable them to live in a substantial residence, to travel abroad, to attend college in other states, to enjoy a high standard of living, and to accumulate savings. *These facts require a deviation from the guidelines to permit the continuation of support for the minor children of $200 per month each as provided for by the 1971 Judgment and Decree.*

(Emphasis added).

Mary Winter testified that she spent $4,000 per month on support of Catherine, William, and Peter, the three children who were under 21 at the time of the hearing. Laurence Winter did not seriously dispute that amount, nor did he dispute that he could afford to pay more in support. He testified that his family expenses amount to about $10,000 per month, well under his minimum net monthly income of $21,500 (based on 1983 figures). Thus, Mary Winter was contributing $3,400 per month in support, and Laurence Winter was contributing $600 per month in support, at a time when his net income far exceeded the combined net incomes of Mary Winter, her husband, and her children.

The trial court and the dissent accept Dr. Winter's argument that an inquiry into the fairness of a decree ends if the children's needs are being met. Under this theory, a decree will never be unfair if the custodial parent provides for more than the children's most basic needs. In *LeTourneau*

*v. LeTourneau,* 350 N.W.2d 476 (Minn.Ct. App.1984), we said:

> [A]ppellant [should not be] required to commit all her income to her needs and the needs of the parties' child while the respondent is required to account only for the deficiency irrespective of his income. This approach undercuts the obligation of the non-custodial parent * * *. A child should not be precluded from benefitting from the income of both parents, nor should the custodial parent be precluded from accruing any savings * *.

*Id.* at 478–79.

■■■ The trial court correctly found that circumstances had changed and that the children are entitled to an affluent lifestyle, but the court effectively placed the burden of providing that lifestyle almost entirely on the mother. The inquiry does not end with a finding that the children's needs are being met; an evaluation of the fairness of the original decree requires consideration of both parents' financial resources and their relative contributions to the children's support. Any other interpretation unjustly penalizes the custodial parent.[2] The trial court incorrectly applied the statute in evaluating whether the terms of the decree were fair by refusing to consider Laurence Winter's financial resources and his relative contribution to the support of his children.

Mary Winter asks this court to order support under the guidelines from the time of the first scheduled hearing in November 1984 until the children each reach age 21. The guidelines provide that an obligor who has a net monthly income of more than $6,000 shall be "the same dollar amounts as provided for * * * an obligor with a net monthly income of $6,000." Minn.Stat. § 518.551, subd. 5 (1984). In this case application of the guidelines would result in a

monthly obligation of $1,500 for one child, $1,800 for two children, and $2,100 for three children.

■■■ Assuming modification is justified, there appears to be no reason for deviating from the guidelines in setting support for Peter, the 17-year-old. The circumstances are slightly different for Catherine and William, however, because they were between 18 and 21 years of age at the time of the hearing. In *Fairburn v. Fairburn,* 373 N.W.2d 609 (Minn.Ct.App., 1985), this court held that a trial court has the discretion to set child support at less than the guidelines amount for children between ages 18 and 21:

> The fact that judgments * * * ordering support until age 21 are to be honored does not mean that courts must treat adult children the same as minors. * * * The trial court acted within its discretion in reinstating the support terms of the parties stipulation when [the child] attains age 18. The trial court should, however, apply the full amount under the guidelines until age 18 since it found no basis for departure.

Thus, application of the guidelines is not mandatory but remains in the trial court's discretion.

We remand to the trial court to redetermine the fairness of the original decree, taking into account both parents' financial resources and their relative contributions to the children's support. The trial court has the discretion to apply the guidelines for children between 18 and 21 and to relate back to January 1985 (the hearing date) any increase in support.

### III

■■■ Mary Winter contends she is entitled to attorney's fees from the trial court. An award of attorney's fees under Minn.

---

**2.** We agree that the children's resources may also be a factor in evaluating the fairness of a decree. In this case, the younger children receive about $200 per month in trust income, which they use for incidental expenses, and a lump sum payment of about $2,000 per year, which is saved for educational purposes. This income does not obviate the trial court's error in refusing to consider the fairness of the father's minimal contribution to their support. The point is not how much money the mother, the father, and the children have individually, but rather, is their individual contribution to support fair in view of their resources?

Stat. § 518.14 (1984) rests almost entirely within the discretion of the trial court and should not be disturbed absent a clear abuse of that discretion. *Lukanen v. Lukanen,* 357 N.W.2d 380, 383 (Minn.Ct.App. 1984). The trial court did not clearly err in refusing to grant attorney's fees. In view of the parties' financial circumstances, we decline to award attorney's fees on appeal.

## DECISION

The trial court may increase a child support obligation up to age 21 when the decree provides for support until that time, provided a substantial change of circumstances is shown.

The trial court erred in refusing to consider the father's financial resources and his relative contribution to the children's support.

We remand for a redetermination of the fairness of the original decree. Application of the guidelines in setting child support for children between 18 and 21 is discretionary.

Reversed and remanded.

POPOVICH, Chief Judge (dissenting).

I respectfully dissent and would affirm the trial court:

1. I am troubled by the majority's finding the trial court erred when finding it had no power to *increase* support obligations for children between the ages of 18 and 21. While this court has ruled reduction can be made for child support between 18 and 21 in *Streitz,* I found no supreme court case holding that increases are authorized too. In *Fairburn,* the trial court increased child support to the age of 18, but reduced it to the original stipulated amount for the period of 18 to 21. We approved the reinstating of the stipulated amount at the age of 18. No authority has been cited by the majority to permit application of the guidelines for support between 18 and 21. Neither has the legislature addressed the question. Without case law or statutory authorization to do so, I believe the trial court was correct in its

finding. Eventually, perhaps, the supreme court will give us a definitive answer.

2. Our scope of review in these matters is limited. We should reverse only when there is clear error and not because we might have arrived at a different result had we been the trial court. If the record is sufficient to affirm, we should do so.

3. The parties' marriage was dissolved in 1971. The issues were resolved based upon a stipulation between the parties, including maintenance, property settlement, and child support in the amount of $200 per month per child. Subsequently, each party remarried. The decree was amended in 1975 to eliminate the maintenance amount because of petitioner's remarriage. It was not until 1984 that petitioner sought an increase in support from $200 per child to $700 per child per month.

An evidentiary hearing was held on January 8, 1985. Both parties testified and 32 exhibits were received. The trial court denied petitioner's motion to raise the child support. The trial court found "that there had been a substantial change in the circumstances of both parties and the children of the parties but that such changes do not make the original terms of the judgment and decree unreasonable or unfair."

At the time of the dissolution, petitioner was a homemaker and her sole income consisted of trust income between $8,000 and $10,000 per year, maintenance of $9,600 per year, and child support of $8,400 per year. She graduated from law school in 1975, engaged in the private practice of law, and became a referee of the family division of the Hennepin County District Court where she currently earns in excess of $54,000 per year.

In 1979 she received a substantial inheritance from her grandfather and created the Mary D. Winter Revocable Trust of 1980. She may revoke the trust, have the assets turned over to her at any time, and enjoys the right to obtain the income and invade the principal at her discretion. In 1983, she received more than $70,000 from that trust and her yearly income from the trust is

approximately $22,000. The trust's value currently exceeds $350,000.

She also continues to receive income from the A.H. Davidson Trust in the amount of $11,800 per year. She remarried in 1977 and her current husband is an assistant county attorney whose salary is in the mid $40,000 range.

4. The children also are the beneficiaries of sizeable trusts which, by their terms, can be used for their care and support. If children have sizeable assets and income of their own, it affects the needs and changed circumstances test. The trial court found the total principal balance of the childrens' trusts currently exceeds $355,000. While the respondent's income has likewise increased since 1971, so has his marital status and needs. Changed circumstances alone do not support an upward support modification. *Giencki v. Haglund,* 364 N.W.2d 433, 436 (Minn.Ct.App. 1985). The income and resources available to petitioner and the children amply provide for the childrens' needs.

The majority misconstrues the dissent's position by claiming under the theory that the fairness of the decree ends if the childrens' needs are being met, a decree would never be unfair if the custodial parent provides for more than the childrens' basic needs. They do not discuss the effect on the needs test when children have assets and income of their own. Here the children have trust assets exceeding $355,000.

The principle that concerns this dissenter is whether assets and income of the children should also be considered, not only the changed circumstances of the custodial and non-custodial parent. Here the childrens' trusts were created after the 1971 dissolution. The majority imply that the dissenter requires the noncustodial parent to provide for all of the childrens' needs. That is an incorrect assumption. In my opinion, if children have assets and income of their own, that should be considered in evaluating whether the custodial or noncustodial parent is required to pay more simply because their circumstances have changed too.