**In re the Marriage of: Gail D. KATZ, petitioner, Respondent,**

v.

**A. Larry KATZ, Appellant.**

No. C4–85–1381.

Court of Appeals of Minnesota.

Jan. 21, 1986.

Review Granted March 27, 1986.

Charles A. Cox, Charles A. Cox, III, Cox & Goudy, Minneapolis, for respondent.

Stephen C. Davis, Brian L. Sobol, Katz, Lange, Davis & Manka, Minneapolis, for appellant.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

Larry Katz appeals from an order determining that the trial court intended to modify Katz's support obligation for children ages 17 and 20 by applying the child support guidelines. We affirm and remand.

## FACTS

Gail Katz and Larry Katz were divorced in 1972 when their son Ronald was seven years old and their daughter Sheryl was four years old. The decree incorporated the terms of a stipulation, which required Larry Katz to pay support of $250 per month per child until each child reached majority, became self-supporting, emancipated, or died. If the children attend college, the decree requires him to pay support until they graduate. Gail Katz was granted permanent maintenance of $500 per month. She was granted the homestead subject to a mortgage; Larry Katz received all other marital assets, the value of which was not specified in the decree.

In 1978 the parties voluntarily agreed to increase child support to $300 per month per child, and Larry Katz agreed to pay all the children's medical expenses not covered by insurance. In addition, Larry Katz began paying for Ronald's books and tuition of approximately $600 per quarter at the University of Minnesota. In January 1984 Gail Katz moved for an increase in child support.[1]

In 1972 when the decree was entered, Gail Katz was unemployed. In 1984 she had a net annual income of $13,200 from her work preparing tax returns. She also receives $250 per month from a renter who lives in her home. She estimated that the cost of supporting the children had risen from $540 per month in 1972 to $1,200 per month in 1984.

In 1972 Larry Katz was a partner in his law firm and had a gross annual income of $91,000. In 1984 his salary and advances totaled $119,000. There is no evidence in the record of his net income, but the trial court found that his net worth is approximately $1.8 million.

The child support and maintenance motions were heard before a family court referee. In January 1985 she issued an order finding, as for Ronald, that no substantial change of circumstances rendered the terms of the decree unfair or unreasonable. In the alternative, she concluded that the court did not have authority to increase child support for him after his 18th birthday. As for Sheryl, the referee found that changes in the cost of living rendered the terms of the decree unreasonable and unfair; however, the referee declined to apply the child support guidelines because:

> * * * there has not been shown a need in addition to that ordered herein for support given the child's earnings and the maintenance paid.

The referee ordered support for Sheryl increased to $350 per month and denied Larry Katz's motion to terminate maintenance. Gail Katz was awarded $1,000 in attorney's fees toward the $5,500 in fees the motion had generated to that point.

On review of the referee's order, the trial court ruled in June 1985 that it had the discretion to increase support for Ronald until he reaches the age of 21, but that after age 21, if Ronald is still attending college, child support would be governed by the terms of the decree. The court concluded there was a substantial change in the cost of living and in the parties' incomes which rendered the $300 support payment for Ronald unfair and unreasonable. As for Sheryl, the court found the referee's reasons for deviating from the guidelines inappropriate because "[t]he minor child should not be precluded from benefiting from her father's income merely because her expenses have been maintained at a minimum." The court conclud-

---

1. The motion to modify child support, which is the subject of this appeal, had a twisted course through the trial court. The motion was denied by a referee in February 1984 on the basis that Gail Katz failed to show a change of circumstances. Larry Katz disputed whether her motion for review of the referee's order was timely. In May 1984 the trial court accepted the review motion and ordered Larry Katz to provide his tax returns. He moved for reconsideration and asked the court to certify the finality of the order for purposes of appeal. The trial court denied his motion in July 1984. Faced with an approaching hearing date in October 1984, the parties agreed to a two-month continuance to try to settle the issue. Instead of settling, in November 1984 Larry Katz moved to terminate Gail Katz's receipt of maintenance.

ed that the guidelines should apply to both children and ordered an evidentiary hearing to determine Larry Katz's net income and the credit toward child support that he should receive for payment of tuition, books, and uninsured medical expenses. In all other respects the referee's order was affirmed.

## ISSUES

1. Is the trial court's order a final, appealable order?

2. Did the trial court abuse its discretion in finding a change of circumstances justified increasing child support to the guidelines amount?

### I

██ The trial court's order provided that it would apply the guidelines in setting support for Ronald and Sheryl, and ordered an evidentiary hearing to determine Larry Katz's net income and the credit he should receive for payment of tuition, books, and uninsured medical expenses. The parties agreed at oral argument that Katz's net income most likely exceeds $6,000 per month, the maximum income used in calculating support under the guidelines. His support obligation for two children would therefore be $1,800. *See* Minn.Stat. § 518.-551, subd. 5 (1984).

In *Angelos v. Angelos*, 367 N.W.2d 518 (Minn.1985), the supreme court said:

[A]ny final orders—those denying as well as granting modifications of custody, visitation, maintenance, and support—are appealable as of right.

*Id.* at 520. In this case the trial court's order did not modify Larry Katz's support obligation; it merely said that it *would* modify the support obligation after the evidentiary hearing. The conclusion is inescapable that this is not a final order.

However, a dismissal at this point would not promote judicial economy. It has taken two years of continuous litigation to arrive at this premature appeal. The parties have fully briefed and argued the issues. Although Larry Katz may appeal again when the exact amount of Katz's child support is determined, we grant discretionary review of the issues raised thus far.[2]

### II

██ Larry Katz argues that the trial court has no power to increase child support for Ronald because he is past age 18. In *Winter v. Winter*, 375 N.W.2d 76 (Minn. Ct.App.1985), *pet. for review denied*, (Minn. Dec. 30, 1985), this court held that when the decree provides for jurisdiction over child support until age 21, the trial court may modify that obligation at its discretion, either by increasing or decreasing the amount. *Id.* at 79. Application of the child support guidelines to children between 18 and 21 is not mandatory but remains in the trial court's discretion. *Id.* at 80 (citing *Fairburn v. Fairburn*, 373 N.W.2d 609 (Minn.Ct.App.1985)).

Larry Katz does not dispute the trial court's finding of a substantial change of circumstances that justifies modification. Instead, he argues that the trial court abused its discretion in refusing to deviate from the child support guidelines. We note preliminarily that because application of the guidelines is discretionary for Ronald, "deviations" in the statutory sense do not occur. The amount of support necessary is within the discretion of the trial court, using the statute as a guideline in the true sense of the word. Because Sheryl is still a minor, application of the guidelines is mandatory absent written findings to support a deviation.

First, he argues that the needs of the children were adequately being met. As

2. As noted above, the trial court's order of June 25, 1985 affirmed the referee's denial of Larry Katz's motion to terminate maintenance. On July 12, 1985 he renewed the motion to terminate maintenance along with another motion to reconsider the court's order. These motions were pending at the time he filed his notice of appeal. Katz did not raise the maintenance issue on appeal. The trial court's decision on maintenance is therefore res judicata until Katz can demonstrate a substantial change of circumstances occurring since June 25, 1985 that would justify modifying his agreement to pay permanent maintenance.

we said in *Winter v. Winter*, this argument unjustly penalizes the custodial parent who manages to provide for more than the children's most basic needs. *Id.*, 375 N.W.2d at 79–80. Furthermore, as Gail Katz argues, children's needs are largely a function of what is available to them. The principle is firmly established that children are entitled to the benefit of both parents' incomes regardless of minimum needs. *See Winter v. Winter*, 375 N.W.2d 76, 80 (Minn.Ct.App.1985); *Derence v. Derence*, 363 N.W.2d 86, 89 (Minn.Ct.App.1985); *LeTourneau v. LeTourneau*, 350 N.W.2d 476, 479 (Minn.Ct.App.1984).

The record shows that Gail Katz and the children live on a strict budget. The trial court specifically found that the children wanted to participate in activities that are presently beyond their means. The trial court did not abuse its discretion in concluding that the amount of support provided by the guidelines would give them the standard of living they would have had but for their parents' divorce.

Second, he argues that Gail Katz's resources were inadequately considered. Gail Katz provided an affidavit based on tax returns stating that Larry Katz's income has averaged $111,000 since 1972 and was as high as $196,000 in 1980. She receives net income of $13,200 per year in wages, $3,000 per year in rental income from the boarder in her home, and $6,000 per year in maintenance. Larry Katz argues that the financial change of circumstances weighs in his favor because her income increased approximately 1200 percent while his remained almost the same. He also argues that a downward deviation from the support guidelines is compelled because his former wife has "amassed" savings of $9,000. This argument is not compelling, particularly in light of his net worth of $1.8 million. The underlying assumption of his argument is that the children's lifestyle should be limited by Gail Katz's financial resources. Again, the trial court did not abuse its discretion in concluding that the children should have the advantages his income can provide.

Third, Larry Katz contends that the trial court failed to consider Sheryl's earnings. A supplemental affidavit shows that Sheryl earns about $186 per month working as a waitress at the Brothers Deli. The trial court said "if the court deviates from the child support guidelines because of the income from such employment, then the child is penalized for having a desire to attain additional spending money." Therefore, the court did not disregard the child's resources in contravention of the statute, but concluded, consistently with the law, that in view of the father's resources, the child's earnings do not warrant a downward deviation from the guidelines.

Fourth, Larry Katz argues that the trial court failed to consider the effect of the parties' stipulation regarding child support. In general, stipulations do not limit the discretionary power of the court to modify child support. *See Kaiser v. Kaiser*, 290 Minn. 173, 180, 186 N.W.2d 678, 683 (1971).

In *Fifield v. Fifield*, 360 N.W.2d 673 (Minn.Ct.App.1985), this court upheld a stipulated amount of child support when the parties knowingly and voluntarily deviated from the guidelines and their financial resources were such that the children's needs were being met. In *Fifield* the mother received $500,000 in property and $2,000 per month in permanent maintenance. Child support was set at $800 per month per child. The court said:

> * * * In this matter * * * tax planning appears to have been a major consideration. Although child support was set at less than provided in the guidelines, appellant received compensating provisions for spousal maintenance payments which do not terminate upon remarriage and large cash payments as part of the property settlement. Application of the guidelines under these circumstances would discourage voluntary settlement in dissolution proceedings.

*Id.* at 675. In the present case the parties did not knowingly and voluntarily deviate from the guidelines by stipulation, nor would modification of child support upset

the basis for other portions of the 1972 decree.

Finally, Larry Katz argues that "[j]ustice requires a deviation, because not to deviate would create a windfall for the custodial [parent] with no likely benefit to the children." There is no indication in the record that Gail Katz is misusing funds provided for the support of her children.

## DECISION

■ The trial court did not abuse its discretion in ordering application of the child support guidelines. We remand for the evidentiary hearing originally scheduled for July 25, 1985. Any increase in child support ordered as a result shall relate back to that date.

We award attorney's fees to Gail Katz for the cost of this appeal. *See* Minn.Stat. § 518.14 (1984). On remand, the trial court shall set a reasonable amount for the appeal after argument by the parties.

Affirmed and remanded.