**In re the Marriage of Gail D. KATZ, Respondent,**

v.

**A. Larry KATZ, Petitioner, Appellant.**

**No. C4–85–1381.**

Supreme Court of Minnesota.

July 2, 1987.

Stephen C. Davis, Brian L. Sobol, Minneapolis, for appellant.

Charles A. Cox, Charles A. Cox, III, Minneapolis, for respondent.

WAHL, Justice.

The primary issue raised by this appeal is whether the trial court has jurisdiction to modify a child support order in a pre–1973 dissolution decree for a child between the ages of 18 and 21. Respondent Gail Katz became the custodial parent of Ronald Katz and Sheryl Katz following the divorce of the parties in 1972, when the age of majority was 21 years. She moved, in 1984, for an increase in child support payments for the two children, who were 20

and 17 years of age respectively at the time of the hearing. The trial court held that it had jurisdiction to increase child support for the children until they reached the age of 21 and that the child support guidelines of Minn.Stat. § 518.551 (1984) were applicable in determining the amount of the support obligation. A panel of the court of appeals affirmed the judgment of the trial court.[1] We affirm.

The judgment and decree dissolving the marriage of these parties in 1972 incorporated the terms of a stipulation providing for alimony, child support, custody, and property division. Respondent Gail Katz was awarded custody of Ronald, then age seven, and Sheryl, then age four, and has continuously been their custodial parent. The decree provided that appellant would pay $250 per month for support of each child, $500 per month permanent alimony (now called maintenance) and the cost of medical insurance for the children. Gail Katz received the homestead, subject to a mortgage; Larry Katz received all other marital assets, the value of which was not specified in the decree. Six years later, in 1978, the parties voluntarily agreed, after respondent had brought a motion for increased support, that appellant Larry Katz would pay child support of $300 per month per child, would pay all medical and dental expenses not covered by insurance, and would pay the cost of the children's religious training. Since Ronald Katz has entered the University of Minnesota, appellant has likewise voluntarily paid Ronald's expenses for tuition and books, and his fraternity dues.

A Hennepin County District Court referee originally heard respondent's motion for increase in child support. The referee ruled that the court lacked jurisdiction to increase child support payments for Ronald because he was over the age of 18. With regard to Sheryl, the referee found that increases in the cost of living since 1972

---

1. *Katz v. Katz*, 380 N.W.2d 527 (Minn.Ct.App. 1986). The appellate court also ruled that appellant's motion to terminate permanent maintenance was "res judicata" because the issue had not been raised on appeal. Additionally and finally, the court of appeals awarded respondent Gail Katz attorney fees incurred in the appeal.

had rendered the terms of the original decree unreasonable and unfair. In ordering an increase in child support for Sheryl to $350 per month, however, the referee deviated downward from the amount established by state child support guidelines found in Minn. § 518.551 (1984).[2] On review the district court found that Gail Katz, who had been unemployed at the time of the decree with monthly expenses of $540 for herself and two children, now earned $22,000 a year with a net annual income of $13,200 plus $250 per month from a renter, with a current monthly budget of $1,800, two-thirds apportioned to the children; that Larry Katz, with a gross annual income at the time of the decree of $91,000, received gross income in 1984 of $119,000, including a nonrecurring distribution of $20,000 with no evidence on the record of net income.[3] The court also found that the consumer price index had increased approximately 250 percent since the time of the judgment and decree. On this evidence the district court affirmed the referee's findings that there had been a change in circumstances since the judgment and decree which rendered the child support terms of the decree unfair and unreasonable. Reversing the referee on the merits, however, the court held it had jurisdiction to increase support for a child over the age of 18 when the obligation to support the child was governed by a pre–1973 decree; that no grounds existed justifying a downward deviation from the statutory child support guidelines with reference to child support for Sheryl; and that in this case they should be applied. The court considered the needs of the children and concluded, in addition, that a child should not be precluded from benefitting from the father's income merely because the child's expenses had been maintained at a minimum. Accordingly, the district court scheduled a hearing to determine appellant's net income to enable application of the child support guidelines.[4] The court noted that appellant's monthly child support obligation should be credited with the payments he makes directly for the children's uninsured medical expenses, tuition, and book costs. The remaining provisions of the referee's order were to continue in full force and effect to the extent they were not inconsistent with the order of the district court.

The court of appeals affirmed the trial court, holding that under a pre–1973 decree the trial court had jurisdiction over child support until age 21 and within its discretion could increase or decrease the amount of child support. The court of appeals further held that the trial court did not abuse its discretion in finding a change of circumstances justified increasing child support to the amount contained in the child support guidelines, and awarded Gail Katz attorney fees for the cost of the appeal.

In this court appellant argues (1) that the trial court erred in finding it had jurisdiction to increase the amount of support for a child between the ages of 18 and 21; 2) that the trial court erred in ruling that support for Sheryl should be increased to the amount set by the child support guidelines; and 3) that the court of appeals erred in awarding attorney fees.[5]

I.

■ Does the trial court have jurisdiction to modify a child support order in a pre–1973 dissolution decree for a child between the ages of 18 and 21? Prior to 1973, in Minnesota the age of majority was the age of 21. By an Act of May 24, 1973, ch. 725,

---

2. The referee likewise denied Larry Katz' cross motion for termination of permanent maintenance and awarded Gail Katz partial attorney fees in the amount of $1,000.

3. A referee's finding, undisturbed by the trial court, was that Larry Katz has a net worth of approximately $1.8 million.

4. Apparently, because this appeal has been pending, the hearing has not occurred.

5. We do not address the res judicata effect of the failure to raise an issue on appeal since that issue is not before us.

§§ 83 and 84, 1973 Minn.Laws 2082, 2131–32, the legislature lowered the age of majority to 18. Pre–1973 stipulations and dissolution decrees based upon stipulations commonly provided that the obligor parent pay child support at a specified rate until the dependent child reached the age of 21 or otherwise earlier became emancipated. Following enactment of the 1973 statute, we held that the statute reducing the age of majority did not apply retroactively to invalidate provisions for the support of children contained in divorce decrees entered prior to the enactment of that statute. *Brugger v. Brugger,* 303 Minn. 488, 495, 229 N.W.2d 131, 136 (1975); *Yaeger v. Yaeger,* 303 Minn. 497, 498–99, 229 N.W.2d 137, 138 (1975). Whether the pre–1973 obligation for support of children till age 21 in a divorce decree rests on judicial decree alone, as in *Brugger,* or on judicial decree incorporating a stipulation of the parties as in *Yaeger,* the trial court has continuing jurisdiction. This continuing jurisdiction extends to the modification or enforcement of the decree. *Bjordahl v. Bjordahl,* 308 N.W.2d 817, 818 (Minn.1981). As we noted in *Angelos v. Angelos,* 367 N.W.2d 518, 519 (Minn.1985), "domestic relationships, by their nature, continue under the jurisdiction of the court virtually throughout the lives of the parties. Accordingly, the legislature specifically authorized modification, in cases of changed circumstances, of those provisions of divorce decrees affecting custody, visitation, maintenance, and *support.* Minn.Stat. §§ 518.18 and 518.64 (1984)." (Emphasis added). This authority of the trial court, absent an explicit statutory prohibition, is unaffected by a change in status such as that from minority to majority.

The trial court's continuing jurisdiction to modify the child support provisions of a pre–1973 judgment and decree is unaffected by our holding in *Hampton v. Hampton,* 303 Minn. 500, 503, 229 N.W.2d 139, 141 (1975), though appellant argues otherwise. In *Hampton* we held that the extraordinary remedy of contempt is not available for enforcement of support orders for children after they have reached the age of 18, that only ordinary judgment enforcement remedies such as levy, attachment, and garnishment are available. *Hampton* stands for the proposition that the extraordinary remedy of civil contempt should not be extended needlessly, not that the continuing jurisdiction of the trial court otherwise to enforce or modify a decree according to its original intent is in any way diminished. There can be no doubt, and the court of appeals has so indicated in *Streitz v. Streitz,* 363 N.W.2d 135, 138 (Minn.Ct.App.1985), that the trial court can reduce support payments for children between the ages of 18 and 21 ordered by pre–1973 decrees when the financial ability of the parent obligated to make support payments has been decreased. The trial court also has the concomitant authority, in its discretion, to increase support for children between the ages of 18 and 21 where the applicable age of majority is 21.[6] In this case the court of appeals followed its holding in *Winter v. Winter,* 375 N.W.2d 76, 80 (Minn.Ct.App.1985), *pet. for review denied,* (Minn. Dec. 30, 1985), that when the pre–1973 decree provides for jurisdiction over child support until age 21, the trial court may modify that obligation at its discretion, either by increasing or decreasing the amount. This is a correct state-

---

**6.** We enunciated in *Brugger* what would, in the face of an equal protection argument, be the rational basis which would support a difference in classification of parents bound by pre–1973 decrees and parents bound by decrees issued after the effective date of Act of May 24, 1973, ch. 725, § 74, 1973 Minn.Laws 2082, 2129. There we said, "This statute, if applied retroactively, would unbalance the equities in prior divorce decrees, which under some circumstances * * * could not be readjusted. * * * [S]upport provisions are usually so intertwined with other rights and obligations in divorce decrees that it usually cannot be said that the child's right to support is the only part of the decree that would be affected by a holding that the child support provisions for child support beyond 18 years of age in decrees entered prior to the enactment of the statute are now void." *Brugger,* 303 Minn. at 494–95, 229 N.W.2d at 135–36. Those same equities would not be incorporated in decrees issued after the effective date of the statute.

ment of the law. We hold that the trial court has jurisdiction to modify a child support order in a pre-1973 dissolution decree for a child between the ages of 18 and 21.

## II

■ Did the trial court correctly consider statutory factors and guidelines in granting a petition for an increase in child support for a minor? The trial court ruled that appellant's obligation for Ronald's and Sheryl's support should be increased to the amount set by the child support guidelines found in Minn.Stat. § 518.551, subd. 5 (1984).[7] In *Moylan v. Moylan*, 384 N.W.2d 859, 860, 864 (Minn.1986), this court held that the Minn.Stat. § 518.551, subd. 5 guidelines apply in all child support cases and modification proceedings. We then clarified the application of those statutory guidelines to cases not involving public assistance, finding in such cases a legislative intent that courts should use the amounts set forth in the guidelines as starting points for the determination of child support awards. *Moylan*, 384 N.W.2d at 863. We required the trial court in each case to make specific findings of fact as to the factors it considered in formulating the award. *Id.* Those findings must take into account "all relevant factors including" the factors set forth in Minn.Stat. § 518.17, subd. 4 (1984):

(a) The financial resources and needs of the child;

(b) The financial resources and needs of the custodial parent;

(c) The standard of living the child would have enjoyed had the marriage not been dissolved;

(d) The physical and emotional condition of the child, and his educational needs; and

(e) The financial resources and needs of the noncustodial parent.

*Moylan*, 384 N.W.2d at 863–64.

In this case the trial court, without the benefit of *Moylan*, which had not yet been decided, apparently considered application of the guidelines to be mandatory. As we indicated in *Moylan*, where the broad and sound discretion of the trial court is exercised within the limits set out by the legislature, an appellate court will not reverse unless it finds a "clearly erroneous conclusion that is against logic and the facts on record." *Moylan*, 384 N.W.2d at 864 (quoting *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984)). Beyond that, we will not reverse a correct decision simply because it is based on incorrect reasons. *Kahn v. State*, 289 N.W.2d 737, 745 (Minn.1980). In the case before us, the record shows that the trial court did consider the appropriate factors after first making the determination that there had been a change in circumstances since the judgment and decree which rendered the child support terms of the decree unfair and unreasonable. The trial court considered Sheryl's desire to participate in certain activities, which is consistent with Minn.Stat. § 518.17, subd. 4(a) and (d). The trial court considered the financial resources of respondent under Minn.Stat. § 518.17, subd. 4(b). Likewise it considered appellant's income, consistent with Minn.Stat. § 518.17, subd. 4(c) and (e). Finally, it considered the financial resources of Sheryl, consistent with Minn. Stat. § 518.17, subd. 4(a). Notwithstanding that it considered the guidelines were mandatory, we hold that the trial court correctly considered statutory factors and guidelines in granting the petition for an increase in child support. We remand the

---

**7.** Minn.Stat. § 518.551, subd. 5, sets guidelines for the amount of child support an obligor parent owes a welfare agency in public assistance cases. It includes a table which sets the percentage of the obligor's net income to be awarded, depending on the obligor's income bracket and on the number of children.

It also provides:

(a) The child support payment guidelines take into consideration the following criteria:

(1) all earnings, income, and resources of the obligor including real and personal property;
(2) the basic living needs of the obligor;
(3) the financial needs of the child or children to be supported; and
(4) the amount of the aid to families with dependent children grant for the child or children.

case for the hearing and for the purposes ordered by the trial court.

## III

■ The court of appeals awarded respondent her attorney fees for the cost of appeal, Minn.Stat. § 518.14 (1984), and ordered the trial court on remand to determine a reasonable amount to be paid for those attorney fees. Contrary to appellant's contention here, respondent did request attorney fees in the court of appeals. Moreover, the record contains considerable evidence from which the trial court can evaluate the respondent's need for fees. Generally, the award for attorney fees lies in the discretion of the court. *Davis v. Davis*, 306 Minn. 536, 538, 235 N.W.2d 836, 838 (1975), *appeal dismissed, cert. denied*, 426 U.S. 943, 96 S.Ct. 3160, 49 L.Ed.2d 1180 (1976). We hold that the court of appeals did not abuse its discretion in awarding attorney fees for the respondent's costs of appeal to that court. Costs to respondent on appeal to this court are allowed in the amount of $800.

Affirmed and remanded.

KELLY, J., dissents.

SCOTT, J., took no part.

KELLEY, Justice (dissenting):

Because I conclude that the family court lacks jurisdiction to modify a child support order in a pre–1973 marriage dissolution action after the obligee child reaches the age of 18 years, I respectfully dissent.

The majority correctly chronicles the history of our laws governing the obligation of parents for support of minor children from a time immediately before the enactment of an Act of May 24, 1973, ch. 725, §§ 83 and 84, 1973 Minn. Laws 2082, 2131–32, (the statute lowering the age of majority from 21 to 18). While in *Brugger v. Brugger*, 303 Minn. 488, 229 N.W.2d 131 (1975) and *Yaeger v. Yaeger*, 303 Minn. 497, 229 N.W.2d 137 (1975), we did hold that enactment of the statute did not relieve a noncustodial obligor parent in pre–1973 stipulations and dissolution decrees from payment of the agreed to and court ordered support obligation as provided in the decree or order, we did not there address the issue posed by this case—to-wit, whether the courts have jurisdiction to increase child support orders in pre–1973 dissolution decrees *after* the dependent child has attained the age of 18. Both *Brugger* and *Yaeger* were premised upon the statutory rule of construction that, absent clearly expressed legislative intent to the contrary, statutes are not to be retroactively applied. In both cases we recognized the bargaining "give and take" that results in an equitable stipulation to be incorporated into a decree, and in those cases we held that in the absence of a statutory mandate to the contrary, equity and fairness dictated that we enforce pre–1973 decree obligations, whether arrived at by stipulation, order of the court, or both. The holdings in those cases were limited to enforcing payment of appropriate child support in orders entered before the child reached 18, the new statutory age of majority. Indeed, simultaneously with *Brugger* and *Yaeger*, in *Hampton v. Hampton*, 303 Minn. 500, 229 N.W.2d 139 (1975), we specifically held the contempt remedy to be unavailable to the custodial parent seeking to enforce post-age–18 child support obligations. In doing so, we were unable to discern any important state interest in ensuring that parents support children past the age of 18. We there noted "by legislative enactment, the state has declared that children after their 18th birthday are adults and are not entitled to support from their parents." *Hampton*, 303 Minn. at 502, 229 N.W.2d at 141.

Notwithstanding that history, without citation of any statutory authority or any case authority from this court or any other court of final jurisdiction, the majority makes the bold assertion that the family court has continuing jurisdiction which "ex-

tends to the modification or enforcement of the decree."[1]

The majority places reliance on *Winter v. Winter*, 375 N.W.2d 76 (Minn.App.1985). I suggest that reliance is inappropriate. In *Winter* the court of appeals premised its conclusion that it had jurisdiction to increase child support in orders made for children over the age of 18 upon the alleged "continuing jurisdiction" over cases involving domestic relationships. In doing so, the court of appeals failed to explain the source of that alleged "continuing jurisdiction." While in dicta we did note in *Angelos v. Angelos*, 367 N.W.2d 518, 519 (Minn.1985), that for some purposes courts might have continuing jurisdiction, that case involved appealability from orders refusing to modify property settlements, not jurisdiction to increase or decrease the *amount* of support the noncustodial obligor parent must pay for support of a person no longer a dependent child of the parties under the laws of this state.

In my opinion, both in *Winter* and in this case, the court of appeals has misapprehended the significance of the "continuing jurisdiction" the statute gives to family courts. *See* Minn.Stat. § 518.64 (Supp. 1985). That the statute grants to the courts "continuing jurisdiction" is not determinative of the law to be applied and the resolution of these matters. The law to be applied in a modification proceeding is not the law in effect when the original decree

was rendered or when it was previously modified; rather courts should apply the law in effect at the time of the current petition for modification. The "continuing jurisdiction" resting in the court is for enforcement of support orders entered before the child reached the age of majority by any method exclusive only of use of the contempt power.

From application of general rules of statutory construction, I can ascertain no legislative intent that courts retain jurisdiction to modify child support orders in pre–1973 dissolutions after the child attains majority. Minn.Stat. ch. 518 provides a comprehensive legislative scheme governing substance and procedure in marriage dissolutions. The word "child" as used in the child support section of that statute is defined as being an individual under the age of 18.[2] That definition, in essence, has existed in the statute since 1974. Other statutory provisions using the word "child" relating to child support have been enacted or amended since 1974.[3] Nowhere in Chapter 518 nor in any post–1974 statutory amendments to child support provisions of that statute has the legislature given any indication that the word "child" as used therein is to include persons over the age of 18. Nowhere in chapter 518 can be found any legislative intent that courts were to have jurisdiction to modify support orders in pre–1973 dissolutions after the

---

**1.** It is not clear what the court means by "enforcement." I suggest that *Hampton* precludes the utilization of the contempt power, at least, in the enforcement of post–age–18 decree modifications, whereas, before the supported child reaches the age of 18, clearly the contempt power is available in "enforcement" of the decree.

**2.** Minn.Stat. § 518.54, subd. 2 (1984) reads:
   **Child.** "Child" means an individual under 18 years of age, an individual under age 20 who is still attending secondary school, or an individual who, by reason of his physical or mental condition, is unable to support himself.
   Since enactment of an Act of April 5, 1978, ch. 772, § 48, 1978 Minn. Laws 1062, 1081, the word "child" has meant an individual under the age of 18, or one who is unable to support himself because of physical or mental condition. The inclusion of those under the age of 20

attending a secondary school was added by an Act of May 17, 1983, ch. 144, 1983 Minn. Laws 389, 390. The legislative definition of secondary school is found in Minn.Stat. § 120.05, subd. 2(a)(3). In the case at bar, Ron Katz is neither physically nor mentally disabled nor is he still attending a secondary school.

**3.** *See, e.g.,* Act of June 9, 1983, ch. 308, 1983 Minn. Laws 1748–67 (now codified in part as Minn.Stat. §§ 518.551, 518.641 (1984)); Act of May 29, 1979, ch. 259, § 31, 1979 Minn. Laws 557, 571–72 (now codified in part as Minn.Stat. § 518.64, subd. 2 (1984)); Act of April 5, 1978, ch. 772, 1978 Minn. Laws 1062–88 (now codified in part as Minn.Stat. § 518.611 (1984)); Act of May 26, 1977, ch. 282, § 29, 1977 Minn. Laws 484, 494; Act of March 14, 1974, ch. 107, 1974 Minn. Laws 157–68.

child reached the age of 18. Nowhere has the legislature indicated that it is to be the policy of this state to provide a dual standard with respect to modification of support obligations in pre–1973 decrees as contrasted with post–1973 dissolutions. In dissolutions granted after 1973, the noncustodial parent obligor's support burden is terminated upon the child reaching the age of 18. That parent by law is relieved of the obligation to pay any support. In *Brugger* and *Yaeger*, we held in pre–1973 dissolution decrees, obligation to pay stipulated or court ordered support continues to age 21. By not legislatively overruling those cases, the legislature has apparently acquiesced in our holdings. However, absolutely no legislative evidence exists that the state's public policy should impose additional burdens upon pre–1973 dissolution child support obligors to support children who have become adults when not imposing a similar obligation on noncustodial parents in post–1973 dissolutions. Therefore, I would interpret the statute (chapter 518) to comport with the literal meaning of the words "child" defined by the legislature in Minn. Stat. § 518.54, subd. 2 (1984), so that courts would have no jurisdiction to modify support orders after the child had passed the age of 18 years. That interpretation, in my opinion, would not only comport with manifested legislative intent, but also, in the absence of any legislative evidence of a contrary public policy, would avoid the necessity of addressing the constitutional equal protection issue.

Had the legislature specifically attempted to enact laws that would exacerbate the disparate treatment of pre–1973 and post–1973 child support obligors, I take it that such an attempt would have fatally violated the equal protection clauses of the Federal and Minnesota State Constitutions.[4]

By construing the statute in a manner that accomplishes the same result, in my opinion the majority perpetuates that disparate treatment of child support obligors placed into different classes on the basis of criteria wholly unrelated to any perceived objectives of the statutes. *See, e.g., Eisenstadt v. Baird,* 405 U.S. 438, 447, 92 S.Ct. 1029, 1035, 31 L.Ed.2d 349 (1972). That construction, in my view, converts otherwise constitutionally permissible statutes, into laws denying a certain class of persons (of which appellant is a member) equal protection of the laws.

The equal protection clause of each constitution denies to the state the power to treat persons placed by statute into different classes on the basis of criteria wholly unrelated to the objective of the statute. Persons may not be treated differently, unless the discrimination is based upon differences reasonably or rationally related to the purpose of the statute. *See, e.g., Starns v. Malkerson,* 326 F.Supp. 234, 239 (D.Minn.1970) (citing *Morey v. Doud,* 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957)), *aff'd,* 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971). Crucial to the determination of whether this rational relation test has been satisfied is the ascertainment of whether an appropriate governmental interest is suitably furthered by the differential treatment of the classes. *See, e.g., Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); *see also Dependents of Ondler v. Peace Officers Benefit Fund,* 289 N.W.2d 486 (Minn.1980). Although a law's classifica-

---

**4.** Amendment XIV to the United States Constitution insofar as applicable reads: "nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Although no clause in the Minnesota Constitution resembles the federal equal protection clause, Minn. Const. art. 1, § 2 provides "No member of this state shall be disfranchised or deprived of any of the rights or privileges se-

cured to any citizen thereof, unless by the law of the land or the judgment of his peers." Generally, during its history this court has treated this state clause as analogous to the federal equal protection clause in the fourteenth amendment. For a history of Minnesota's equal protection clause and its interpretation, see, generally McKnight, *Minnesota Rational Relation Test: The Lochner Monster in the 10,000 Lakes,* 10 Wm. Mitchell L.Rev. 709, 722–723 (1984).

tion may treat one class of persons differently from another, it can neither be arbitrary nor unreasonable, and must be based upon a difference having a fair and substantial relationship to the legislation's objective. *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). To aid in the rational relation analysis, this court in *Schwartz v. Talmo,* 295 Minn. 356, 205 N.W.2d 318 (1973), advanced three criteria which must be met if a legislative classification is to withstand an equal protection challenge.[5] I conclude that the interpretation of the statute arrived at by the majority fails to meet any of those criteria. Admittedly, it can be argued that under the court's interpretation all support obligors in pre–1973 support orders are uniformly classified and treated alike. I contend the first requirement of the *Schwartz* criteria is not met because support obligors in decrees entered before and after 1973 are "similarly" situated in that they possess the identical obligation—to-wit, the obligation to support their children pursuant to court orders. However, those obligors in

post–1973 stipulations and decrees receive disparate treatment because no court has jurisdiction to order any support, let alone increased support, for support obligees who have attained the age of 18, whereas, according to the majority's interpretation of the statute, obligors in pre–1973 stipulations and decrees are subjected to the jurisdiction of all courts for the purpose of increasing support amounts for obligees between the age of 18 and 21 years.

Likewise, it appears to me the second of the three *Schwartz* criteria is not met. By subjecting support obligors in pre–1973 support orders to continuing jurisdiction of courts to increase support obligations after the obligee reaches 18, when all other support obligors are statutorily immune from the exercise of such jurisdiction, creates a distinction which to my view appears to be "manifestly arbitrary or fanciful" furnishing no "natural and reasonable basis in the necessity or circumstances" to justify such disparate treatment, *Schwartz v. Talmo,* 295 Minn. at 362, 205 N.W.2d at 322.[6]

Finally, I'm unconvinced that the disparate classification is germane to the purpose

5. The rule is that legislative classification will be held to be constitutionally valid if—
(1) the classification uniformly, without discrimination, applies to and embraces all who are similarly situated with respect to conditions or wants justifying appropriate legislation;
(2) the distinctions which separate those who are included within the classifications from those who are excluded are not manifestly arbitrary or fanciful, but are genuine and substantial so as to provide a natural and reasonable basis in the necessity or circumstances of the members of the classification to justify different legislation adapted to their peculiar conditions and needs; and
(3) the classification is germane or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the remedy or regulations therefor which the law purports to provide.
*Schwartz,* 295 Minn. at 362, 205 N.W.2d at 322.

6. In footnote 6 of the majority opinion, the court points out that in *Brugger,* we found a rational basis for the disparate treatment of pre- and post–1973 support obligors. I concur in the rational basis analysis employed by the court in *Brugger,* but submit that that analysis falls far short of what the court rules today. As the extracted quote from *Brugger* in footnote 6 dem-

onstrates, facts supporting a rational basis for holding a pre–1973 support obligor to his agreed upon bargain or court imposed obligation was that to do otherwise would not only affect that support obligation under a pre–1973 decree, but other rights and obligations incorporated into the decree and order as well. *See Brugger,* 303 Minn. at 494–95, 229 N.W.2d at 135–36. Following enactment of 1973 Minn. Laws, ch. 725, §§ 83 and 84, those same equities would usually not exist in dissolution decrees. But that sound rational basis analysis is inapplicable to the issue before us today. The grounds for increasing or decreasing support awards are identical for modification of pre–1973 or post–1973 support decrees. Application of the 1973 statute to deprive courts of jurisdiction to modify pre–1973 support decrees would "not unbalance the equities in prior divorce decrees." Resolution of the issue of modification rests upon grounds independent of other "intertwined * * * rights and obligations in divorce decrees." *Brugger,* 303 Minn. at 494, 229 N.W.2d at 135. Clearly courts have no jurisdiction to modify support orders in post–1973 decrees or orders after the child has reached 18. To hold those courts have jurisdiction to compel support obligors in pre–1973 decrees to pay additional support after the supported child gains majority results in unfair disparity bottomed on no rational basis.

of the law. What distinctive needs exist that are peculiar to the class of support obligors in pre–1973 decrees that are dissimilar to those in post–1973 decrees and orders to justify the disparate treatment after the obligees reach the age of 18? I can find none. Instead, I concur in, and reiterate what we said in *Hampton v. Hampton*, 303 Minn. 500, 502, 229 N.W.2d 139, 141 (1975):

> We perceive no interest of the state in this matter. The state by legislative enactment has evidenced an interest in support of minor children, incapacitated children irrespective of their age, and alimony payments for a spouse. However, by legislative enactment, the state has declared that children after their 18th birthday are adults and are not entitled to support from their parents.

While one may question the wisdom of the state's policy, determination of that policy remains the proper function of the legislature, not the courts.

Accordingly, I would reverse the lower courts and hold that after an obligee in a support order reaches majority, the courts have no further jurisdiction to modify any support order entered prior to that date.