In Re the Marriage of Karen Louise DRISCOLL, Petitioner, Appellant,

v.

Bruce Gardner DRISCOLL, Respondent.

No. C7-87-360.

Court of Appeals of Minnesota.

Oct. 20, 1987.

Richard E. Prebich, Hibbing, for appellant.

David Naughtin, Hibbing, for respondent.

Heard, considered and decided by RANDALL, P.J., and LANSING and MULALLY *, JJ.

## OPINION

RANDALL, Judge.

Karen (Driscoll) Biondi appeals from the judgment and decree and the amended judgment and decree in a marital dissolution action. We affirm in part, reverse in part, and remand.

## FACTS

Karen Biondi and Bruce Driscoll separated in March 1986 after an eighteen year marriage. Respondent, a 45 year old college graduate, worked throughout the marriage as a sales representative for Merck, Sharpe and Dohme. In the six years prior to the dissolution, the parties relocated four times due to respondent's job. Appellant, a 44 year old high school graduate, attended Hibbing Junior College from 1962 to 1963 and worked at various clerical and minimum wage jobs until one year after the marriage. She was occasionally employed outside the home in minimum wage jobs until their daughter was born in 1976. After that time, appellant was not employed outside the home.

Prior to the dissolution hearing, appellant resumed her education full time at Hibbing Junior College. At the time of the hearing she was in her sophomore year. Appellant receives a Pell grant which covers her tuition, books and supplies and, in addition, gives her a quarterly allowance of $230. She attended summer school but receives no grant for summer school. She plans to complete her degree at the University of Wisconsin. Her anticipated graduation date, if she continues school full time, is spring 1989.

At trial, L. James Jackson, a vocational rehabilitation expert, testified that, if appellant obtains her degree, she will be employable and capable of earning an annual salary between $10,000 and $19,000. He testified that without a college degree she was capable of earning $8000 to $10,000.

Appellant submitted evidence of monthly expenses of $1,533.01. These expenses included her house payment of $558.51, but did not include two home improvement loan payments totaling $338.43, which Driscoll paid until entry of the decree.

The trial court awarded appellant all right, title and interest in the homestead and apportioned to her the homestead mortgage payment and two home improvement loans. Based on respondent's appraisal, which was entered into evidence by appellant, the trial court valued the homestead at $79,500, with a net equity of $24,600. At the time of the hearing, the homestead was subject to a $46,000 mortgage and two home improvement loans with outstanding balances of $3000 and $5900. The trial court found that, if the homestead were sold and the mortgage and liens were paid, appellant would receive approximately $24,000 in cash. The court found appellant's monthly living expenses would be approximately $1200 a month, including reasonable rental, if she were to sell the homestead. If appellant were to retain the homestead, her total of monthly mortgage and home improvement loan payments would be $896.94.

The trial court gave respondent a lien against the home, effective until the mortgage and home improvement loans were paid in full. The amount of the court granted lien was equal to the outstanding balances on the mortgage and two home improvement loans.[1] The lien the trial court granted respondent was not an asset. It had no value, but protected respondent's interests in the event the home were sold, since he was legally obligated on all three loans.

The court awarded appellant $500 per month rehabilitative maintenance beginning December 1, 1986, continuing to November 1, 1989. The court initially ordered respondent to pay $550 per month child

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. The mortgage was recorded against the property, but the two home improvement loans were not recorded.

support, but after hearing post-trial motions, it raised child support to $600. The court awarded appellant the vehicle in her possession and awarded the parties the household goods in the possession of each. The court awarded respondent the parties' 1985 income tax return check of $2874, his 1986 bonus, and ordered him to pay appellant $2500 cash. The court ordered respondent to assume the balance of the marital debts of $3,231.80.

The trial court memorandum attached to the dissolution judgment stated in pertinent part:

> The overall property settlement was intended by the Court to be substantially equal value-wise. Petitioner received:

| | |
|---|---|
| Homestead | $24,000 |
| Car | 2,000 |
| Miscellaneous personal property | 5,000 |
| Cash property settlement | $2,500 |
| Total | $33,500 |

> Respondent received:

| | |
|---|---|
| Pension | $22,000 |
| Savings | 10,000 |
| Tax refund | 2,900 |
| Miscellaneous personal property | 1,500 |
| Debts | (3,200) |
| Cash property settlement | (2,500) |
| Total | $31,300 |

The above analysis is somewhat misleading since the Court used Respondent's figures as to the household personal property each party received. Taking into consideration the disparity in the parties' testimony as to the value of those items and applying that to the overall property division herein, the Court is of the opinion that the assets have been divided in a manner that is substantially equal value-wise.

In its post trial order the court amended its finding of respondent's net income upward to $2890 from the original finding of $2690 a month, to include his annual bonus.

To calculate guidelines child support on respondent's $2890 monthly net, the court first subtracted the maintenance awarded to appellant, $500 per month, and applied the guidelines to the $2390 remaining. From this balance, the 25% guidelines figure resulted in a child support order of $600 per month. Had the court applied the guidelines to respondent's $2890 net income before deducting maintenance, guidelines support would have been $722.50.

In addition, the order provided that, when respondent's maintenance obligation ceased, child support would be recalculated to equal 25% of respondent's net monthly income.

The court awarded respondent his savings and security plan, an employment benefit, to which the court assigned an after tax value of $10,589.86. In addition, the court awarded respondent his vested pension plan, present value $22,000. The pension plan will pay $682.33 per month beginning at age 65.

After trial, appellant moved for findings amending

> respondent's net income;
>
> valuation of respondent's pension;
>
> maintenance to provide her a reasonable period to get a job and a finding that her income will not equal respondent's;
>
> personal property valuation to reflect the parties were awarded equal amounts of personal property;
>
> present value of respondent's savings plan to $13,776.82;
>
> increasing child support from $550 to $600 and maintenance from $500 to $650;
>
> attorney fees of $1000;
>
> home improvement debts to be allocated to respondent; and
>
> increasing appellant's cash award from $2500 to $3600.

Appellant also moved the court for leave to present additional evidence on the value of respondent's pension plan.

The only evidence provided at trial by either party on pension valuation was documentary. At the post trial hearing, appellant's attorney informed the court that, as a result of the court's disposition of debts and property, appellant quit school and was currently looking for a job.

In addition to appellant's appeal, respondent filed a notice of review on his net income.

## ISSUES

1. Did the trial court err by subtracting the maintenance award from respondent's net income before it applied the guidelines to calculate child support?

2. Did the trial court err in its division of the marital property?

3. Did the trial court err by failing to award appellant attorney fees?

## ANALYSIS

### I

### Child Support and Maintenance

To calculate child support, the trial court subtracted the amount of maintenance respondent is to pay appellant from respondent's net income before it applied the guidelines percentage to calculate child support. Accordingly, the court set child support at $600 per month. The trial court further ordered that once respondent's maintenance obligation ceases, child support will be recalculated to 25% of his monthly net income.

Appellant argues that subtracting contemporaneously ordered maintenance from respondent's gross income, in the process of determining his net income, constitutes an inappropriate downward deviation from the child support guidelines. Appellant contends this method of calculating support is erroneous and is a "subterfuge for concealing a downward deviation from the guidelines." If the court had not subtracted maintenance before applying the guidelines percentage, child support would have been $722.50.

Appellant claims the trial court deviated downward from the guidelines without making adequate findings to justify the deviation. Minn.Stat. § 518.551, subd. 5 (1986). We do not comment on this argument, because we remand the child support issue on other grounds.

█ This issue centers on the interpretation of Minn.Stat. § 518.551, subd. 5. Interpretation of a statute is a question of law. Appellate courts need not defer to trial courts when reviewing questions of law. *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349, 354 (Minn.1977); *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn.1977).

█ The trial court interpreted Minn. Stat. § 518.551, subd. 5, as compelling it to subtract the $500 maintenance award it was granting from respondent's net income prior to calculating child support. The trial court, in its memorandum accompanying the dissolution judgment, stated:

> Due to the maintenance awarded herein, for the next three years [respondent's] net income for purpose of computing child support in accordance with statutory guidelines must be reduced by the amount of maintenance paid. Therefore, child support was computed at 25 percent of $2190, or approximately $550.

Whether contemporaneously ordered maintenance is an allowable deduction from gross income to determine net has not been addressed by appellate courts. Minn.Stat. § 518.551, subd. 5, enumerates the various allowable deductions from gross income including "child support or maintenance order that is currently being paid." On this issue of first impression, we accept appellant's contention that this language in subdivision 5 was intended to allow deductions from gross income of child support and maintenance orders of *prior* marriages, but not a contemporaneous order of maintenance.

We acknowledge the logic of respondent's argument, which the trial court accepted. Whether he has to pay a former spouse $500 a month, or a spouse he is in the process of divorcing $500 a month, he is still paying $500 a month from his monthly income, and thus that amount is now not available for child support. However, we find that if a trial court applies the child support guidelines to the obligor's monthly net income first, and then considers maintenance, it still can compute a reasonable package[2] of support and maintenance based on the statutory factors, in-

2. Minn.Stat. § 518.552, subd. 2(a) (1986).

cluding obligor's available income and obligee's needs.

■ Therefore, we hold that subtracting contemporaneously ordered maintenance in the process of determining the obligor's net income available for child support is an error in the application of Minn.Stat. § 518.551, subd. 5. We remand for recalculation of child support consistent with this opinion. Minn.Stat. § 518.552, subd. 2(a), in pertinent part, requires that the court consider all relevant factors,

> including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian.

Our holding that child support be calculated without deducting contemporaneous maintenance from obligor's net income, by definition, will raise the amount of support required of obligor, if the trial court finds guidelines support appropriate. While we find that the $500 per month maintenance was within an acceptable range of judicial discretion, we note that, since we are requiring the trial court to recalculate child support, the trial court has the authority on remand, pursuant to Minn.Stat. § 518.552, subd. 2(a), to review the overall package of support and maintenance.

### Amount and Duration of Maintenance

Appellant next argues the court erred in the amount and duration of maintenance ordered. The trial court has broad discretion when determining spousal maintenance. *DuBois v. DuBois*, 335 N.W.2d 503, 507 (Minn.1983). We will affirm where the maintenance order has an acceptable and reasonable basis in fact. *Id.* The trial court must make findings on the factors contained in Minn.Stat. § 518.552. (1986).

Appellant claims the effect of the court's order of $1100 combined maintenance and child support forces her to sell the homestead because she cannot afford both the mortgage and home improvement loan payments. The trial court awarded appellant the homestead in fee simple absolute, with a substantial equity of $24,600. A reading of the court's conclusion of law shows that the court did not order appellant to sell the homestead:

> Monthly living expenses for [appellant] and the minor child of the parties will be approximately $1200 assuming the homestead is sold and [appellant] obtains reasonable and adequate living quarters for her and her daughter on a rental basis.

> Monthly living expenses for [respondent] will be approximately $1200 per month assuming he obtains living quarters comparable to that anticipated for [appellant].

■ Appellant argues that she was not given enough maintenance to keep the homestead, make the mortgage and home improvement loan payments, and provide for herself and the parties' child. Although the ability of a custodial parent to remain in the homestead is an appropriate factor to consider, it is not absolute. The amount of money an obligor is ordered to pay for child support and maintenance has to be reasonably related to the obligor's ability to pay. Minn.Stat. § 518.552, subd. 2(g) (1986). Here, the amount of property awarded each party is substantially equal. Taking together the amount of property awarded to appellant, including the entire cash equity in the homestead, and the amount of child support (which likely will not diminish on remand), the trial court did not abuse its discretion by granting appellant substantial equity in the homestead and $500 per month maintenance.

■ Appellant claims the trial court's reservation of maintenance constitutes a restriction on the court's discretion in a possible future hearing on the maintenance modification. The trial court stated:

> [T]he issue of spousal maintenance shall be thereafter reserved by the Court, provided however that it is the Court's expectation that further maintenance would be payable only in the unforeseen circumstance that [Biondi] is not self supporting by that time.

We agree with respondent's assertion that it is premature for appellant to be concerned with reservation of maintenance. If necessary, she can move to modify the decree's maintenance provisions near the

end of her rehabilitation period. *Wibbens v. Wibbens*, 379 N.W.2d 225, 227 (Minn.Ct. App.1985).

### Respondent's Net Income

■ Respondent filed a notice of review of the trial court's finding of his net income. After trial, he contended, he claimed six exemptions in 1985, the year used by the court to calculate his net income. Now that he has lost the home interest deduction and dependency deduction, he contends he can claim only one. Because of these differences, he argues, the trial court's calculation of his net income is erroneous.

> It is axiomatic that in divorce cases the district court must be accorded a broad discretion with respect to the division of property * * *. [The trial court is permitted] to make such disposition of property acquired during coverture as "shall appear just and equitable, having regard to * * * all the facts and circumstances of the case."

*Bollenbach v. Bollenbach*, 285 Minn. 418, 426–7, 175 N.W.2d 148, 154 (Minn.1970) (citation omitted).

Appellant contends the court's order requires her to sell the homestead by awarding her insufficient funds with which to pay the mortgage and the two home improvement loans. The trial court awarded appellant all right, title and interest in the homestead. It did not order her to sell the homestead. If appellant wishes to remain in the home until her daughter graduates from high school, she is free to do so.

■ Appellant requests an additional $338.43 a month to pay for two home improvement loans over and above whatever amount the trial court finds reasonable for maintenance. Given the deference we grant to the fact finder in dissolutions, reviewing the record as a whole, and taking into account the property settlement, respondent's income, respondent's needs, appellant's needs, and the anticipated range of reasonable child support on remand, we cannot say that the trial court abused its discretion in not requiring respondent to pay two home improvement loans over and above maintenance.

Appellant claims the court's division and valuation of marital property was an abuse of discretion. She claims that in this case, a "just and equitable division" of the property requires the court to award her more than half of the marital estate.

■ The property division must be just and equitable. *See e.g., Ruzik v. Ruzik*, 281 N.W.2d 502 (Minn.1979). If the court's valuation has an acceptable basis in fact and principle, we must affirm it. *Bollenbach*, 285 Minn. at 426–7, 175 N.W.2d at 154. We find the values of the various items of marital property are supported by the evidence. The total assets of $64,800, which included the home and respondent's pension plan, are modest. The trial court did not abuse its discretion when it granted appellant approximately 56% of the marital estate. We see no reason to disturb the trial court order on property division.

■ Appellant argues the trial court erred by refusing to include respondent's 1986 bonus in the property settlement. Respondent used the funds to buy some appliances after the separation, and to pay temporary maintenance and child support. The trial court did not err by failing to include these funds. *See Bollenbach*, 285 Minn. at 426–7, 175 N.W.2d at 154.

■ Finally, appellant argues that the trial court erred by granting respondent a lien against the homestead for the amount of the unpaid mortgages. We find the lien was a proper exercise of trial court discretion. As a no value asset, the court-ordered lien simply protects respondent in the event appellant defaults on any of the loans or sells the homestead as, until all three loans are paid off, respondent remains a legal obligor on the loans.

### III

**Attorney fees**

■ Trial courts are granted discretion when determining whether to grant attorney fees. Attorney fees may be awarded to enable a party "to carry on or to contest

the proceeding." Minn.Stat. § 518.14 (1986); *see also Davis v. Davis*, 306 Minn. 536, 538, 235 N.W.2d 836, 838 (1975), *appeal dismissed, cert. denied*, 426 U.S. 943, 96 S.Ct. 3160, 49 L.Ed.2d 1180 (1976) (*cited in Katz v. Katz*, 408 N.W.2d 835, 840 (Minn.1987)); *Solon v. Solon*, 255 N.W.2d 395, 397 (Minn.1977). The trial court found appellant had sufficient property to pay her own fees. This finding is not an abuse of discretion.

## DECISION

The trial court erroneously subtracted future maintenance from respondent's net income before applying the child support guidelines. We remand for recalculation of child support, but affirm on all other issues.

Affirmed in part, reversed in part, and remanded.

LANSING, J., concurring in part, dissenting in part.

LANSING, Judge (concurring in part, dissenting in part).

I concur in the holding that a contemporaneous maintenance obligation should not be subtracted from net income prior to the application of the child support guidelines. The guidelines permit the deduction of a "maintenance order that is currently being paid" in arriving at net income. Minn.Stat. § 518.551, subd. 5(viii) (1986). The contemporaneously ordered maintenance amount was not "currently being paid" and should not have been deducted.

Assuming the proper application of the child support guidelines, the court's provision of $500 per month maintenance is not an abuse of discretion. However, the evidence does not support the conclusion that three years is a sufficient period of time for Karen Biondi to become self-supporting. Had the court not allocated the home improvement debt exclusively to Biondi, she may have been able to obtain her college degree and become self-supporting at a reasonable income level without forfeiting adequate housing for herself and her daughter. Because the property division and debt allocation forced Biondi to quit

school and obtain employment, her earning capacity is substantially diminished.

An award of rehabilititative maintenance should permit a reasonable budget. Although that may require a disporportionate financial burden on the obligor spouse, it is temporary and that is the rationale. Biondi's three-year maintenance provision is apparently for rehabilitation, because it is temporary. However, in light of her obligations, it does not afford a reasonable opportunity for rehabilitation.

Although the majority states that $500 spousal maintenance per month is not an abuse of discretion, it nonetheless remands for computation of a reasonable "package" of support and maintenance, a concept which distorts the meaning of the statute.

Minn.Stat. § 518.552 does require consideration of any sum being received as custodian for a child, but that is only one factor which the trial court is required to consider. The court is also required to consider the limited financial resources of Karen Biondi, the amount of marital property which she received, her ability to meet her reasonable needs, the time it may take for her to acquire sufficient education to find appropriate employment, the standard of living during the marriage, the 18–year length of the marriage, the substantial time she has been absent from the workplace, her loss of earnings, her lack of retirement and seniority benefits, her age and physical condition, Bruce Driscoll's ability to provide maintenance, Bruce Driscoll's reasonable needs, and the contribution of each party to any marital property. The statute also requires that a temporary award not be preferred over a permanent award where the factors justify a permanent award. That is the appropriate "package" which must be considered in determining spousal maintenance.

In addition, Biondi's limited assets do not allow for payment of attorney's fees. On the facts of this case, attorney's fees should have been allowed.