*SThis opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1790**

State of Minnesota,
Respondent,

vs.

Bradley Christopher Roehl,
Appellant.

**Filed August 4, 2014
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CR1135419

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Steven M. Tallen, Minneapolis, Minnesota (for respondent)

Peter J. Timmons, Minneapolis, Minnesota (for appellant)

Considered and decided by Cleary, Presiding Chief Judge; Reyes, Judge; and

Stoneburner, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REYES**, Judge

On appeal from his DWI conviction, appellant argues that the district court erred by failing to suppress the results of a breath test on the basis that the evidence was obtained illegally as the product of a warrantless search. We affirm.

## FACTS

On November 12, 2011, police stopped appellant Bradley Christopher Roehl on suspicion of driving while impaired. After failing field sobriety and preliminary breath tests, Roehl was arrested.

At the police station, the arresting officer read Roehl the implied-consent advisory for a breath test, as required by Minn. Stat. § 169A.51, subd. 2 (2010). The advisory informed Roehl, among other things, that refusal to take a test is a crime and that, before making a decision about testing, he had the right to consult with an attorney. *Id.* Roehl stated that he understood the advisory and wished to speak to an attorney. Roehl contacted his mother and father via telephone and spoke to them before then informing the officer that he was not going to consult an attorney and would take the test. Roehl's breath test yielded an alcohol concentration of .21, which exceeded the legal limit of .08.

The state charged Roehl, in relevant part, with driving while impaired, a gross misdemeanor under Minn. Stat. § 169A.20, subd. 1(5) (2010). Roehl moved to suppress the results of the breath test, arguing that the breath test was obtained as the product of an unconstitutional search and that his consent was improperly coerced. The district court denied Roehl's motion and, after a trial on stipulated facts, found him guilty. Roehl

appealed his conviction, but the appeal was stayed pending the supreme court's decision in *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). Thereafter, the stay of appeal was dissolved, and the appeal was reinstated.

## D E C I S I O N

"When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing–or not suppressing–the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). We review the district court's findings of fact under a clearly erroneous standard, but legal determinations are reviewed de novo. *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006).

The United States and Minnesota Constitutions prohibit the unreasonable search and seizure of "persons, houses, papers, and effects." U.S. Const. amend. IV; Minn. Const. art. I, § 10. Taking a sample of a person's breath constitutes a search under the Fourth Amendment and requires a warrant. *State v. Netland*, 762 N.W.2d 202, 212 (Minn. 2009), *abrogated in part by Missouri v. McNeely*, 133 S. Ct. 1552 (2013), *as recognized in Brooks*, 838 N.W.2d at 567. Warrantless searches are per se unreasonable, subject to limited exceptions. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992). One such exception is consent. *Brooks*, 838 N.W.2d at 568. "The state bears the burden of establishing an exception to the warrant requirement." *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001).

Roehl argues that the warrantless breath test constituted an unreasonable search and that the district court "incorrectly determined that the requirement of a search warrant

3

applied to nothing other than warrantless blood testing." Roehl also contends that the district court erred in finding that Roehl's consent to take the breath test was not improperly coerced. These arguments are without merit.

The district court did not have the benefit of the *Brooks* decision when it ruled that "*McNeely* is limited to cases involving warrantless nonconsensual blood draws for the purposes of [alcohol-concentration] testing." But "we will not reverse a correct decision simply because it is based on incorrect reasons." *Katz v. Katz*, 408 N.W.2d 835, 839 (Minn. 1987). In *Brooks*, the supreme court applied the holding in *McNeely* when it stated that "exigency created by the dissipation of alcohol in the body" alone is not enough to justify a warrantless search under Minnesota's implied-consent law. 838 N.W.2d at 567. But it noted that a warrant is not necessary for police officers to test someone's breath, blood, or urine if the person voluntarily consents to the search. *Id.* at 568. Consent must be given "freely and voluntarily" based on the preponderance of the evidence. *Id.*

The *Brooks* court further explained that, to determine whether someone has voluntarily consented to a search in the implied-consent context, we must consider the totality of the circumstances, "including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* at 569 (quoting *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994) (quotation marks omitted)). Importantly, "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570. When a police officer reads a person the implied-consent advisory, the officer makes it clear that the

4

person has "a choice of whether to submit to testing." *Id.* at 572. "While an individual does not necessarily need to know he or she has a right to refuse a search for consent to be voluntary, the fact that someone submits to the search after being told that he or she can say no to the search supports a finding of voluntariness." *Id.*

Here, the record shows that Roehl voluntarily consented to the breath test. After Roehl was arrested for driving while impaired and taken to the police station, an officer read him the implied-consent advisory. There is no evidence in the record that the officer deviated from the procedures established under the implied-consent law, and the district court found that the officer followed the implied-consent procedure, including providing Roehl the opportunity to speak to an attorney. Roehl nonetheless contends that he cooperated because he was advised by "an armed, uniformed police officer" that failure to consent was a crime. But Roehl's consent was not coerced simply because he was advised that refusal is a crime. *Id.* at 570. Consent may be voluntary even if given under uncomfortable circumstances or if giving or withholding consent forces the defendant to make a difficult choice. *Id.* And a defendant may consent while in custody, particularly if his consent does not follow repeated questioning by police or several days in custody. *Id.* at 571.

Roehl's suggestion that his cooperation could have originated from his belief that he had no other options is not supported by the record. Roehl stated that he understood the advisory and that he wanted to consult an attorney. But after speaking with his parents via telephone, Roehl declined the opportunity to speak with counsel, telling the officer that he was not going to speak with an attorney and would take the breath test.

5

The totality of the circumstances shows, as a matter of law, that Roehl voluntarily consented to the breath test. Accordingly, the district court did not err by denying Roehl's suppression motion.

**Affirmed.**